## JAMES DOLAN v. JOHN L. SCANLAN.

COMMISSION ON SALE—BROKER—AGENT.—A party who employs a broker to sell real estate may, notwithstanding, negotiate a sale himself; and if he does so without any agency of the broker, and before the latter has procured a purchaser, he is not liable for commission.

ID.—ID.—ID.—The commission of a broker is earned by finding a sufficient purchaser ready and willing to enter into a valid contract for the purchase, upon the terms fixed by the owner; and having introduced such a one to the owner as a purchaser, he is not deprived of his right to commission by the owner negotiating a sale himself.

APPEAL from a judgment, and an order denying a new trial, in the Fourth District Court for the City and County of San Francisco. MORRISON, J.

*L. Quint,* and *C. W. Kendall,* for Appellant.

To entitle plaintiff to a commission under the contract sued upon, he must show that he found a purchaser able and willing to purchase upon the terms authorized, and that he brought him to defendant. Doing less than this, plaintiff is not entitled to recover.

" The broker must complete the sale ; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commission." (*McGavock* v. *Woodlief,* 20 How. 221.)

"A party having employed a broker to sell real estate may, notwithstanding, negotiate a sale himself; and if he does so without any agency of the broker, is not liable to him for commission. To earn his commission the broker must be an efficient agent in, or the procuring cause of, the contract." (*McClave* v. *Paine,* 49 N. Y. 563.)

To entitle a real estate broker to recover commissions upon a sale, it must appear that his efforts were the procuring cause of the sale.

" When two brokers have been employed by an owner, and one of them in fact names the property to the purchaser, and the purchaser negotiates solely with him and at his instance with the owner, the other broker is not entitled to commissions, notwithstanding he casually learns that such purchaser is con-

sidering the expediency of making the purchase, and therefore calls upon him and urges the purchase, and reports his name to the owner." (*Briggs* v. *Rowe,* 4 Keyes, 424.) We also refer to *Phelan* v. *Gardner,* 43 Cal. 306; *Jacobs* v. *Kolff,* 2 Hilt. 133; *Barnes* v. *Roberts,* 5 Bosw. 73; *Kimberly* v. *Henderson.* 29 Md. 515.

*Russell' J. Wilson,* for Respondent.

There is, confessedly, but one question involved in the entire case—whether plaintiff, after being employed by the defendant, fulfilled his part of the contract, and was instrumental in *effecting* the sale.

No errors of law are complained of or assigned in the statement. The case was tried without a jury, there was a substantial conflict in the evidence, and the Court, sitting as a jury, determined all questions of fact in favor of the plaintiff.

When there is a conflict in the evidence, this Court has invariably declined to look further into the record, and it should adopt in this case an opinion recently delivered in the case of *Williams* v. *Hartford Fire Insurance Company,* composed of ten words, to wit:

" There was a substantial conflict in the evidence. Judgment affirmed."

In the absence of a jury, the Court is the sole judge of the credibility of the witnesses, and its finding is conclusive.

McKEE, J.:

This case arises out of an action to recover certain commissions which, it is claimed, the defendant agreed to pay to the plaintiff for selling certain mining property.

The complaint alleges that the defendant was the owner of a mine in Mariposa County, called the Golden Virgin Mine; that he employed the plaintiff to sell it for him; that he agreed to pay plaintiff for his services, in making a sale, the sum of $5,000; and that the plaintiff did, in pursuance of his employment, on the 20th day of May, 1877, negotiate and complete a sale of the mine to one C. W. Thomas for $20,000; yet the defendant refuses to pay him his commissions therefor.

The allegations of the complaint are denied by the answer. The Court below gave judgment in favor of the plaintiff. Defendant moved for a new trial, upon the grounds, among others: "Insufficiency of the evidence to justify the decision of the Court; and the same is against law. The evidence being insufficient in this:

"(a) That it failed entirely to show or establish any contract whatever between the plaintiff and the defendant.

"(b) That said evidence failed to show that plaintiff found a purchaser for said mine.

"(c) That the evidence does show that the defendant himself procured the purchaser, and actually sold the mine himself, unaided and unassisted by the plaintiff."

The motion for a new trial was denied, and from the order and judgment defendant appealed.

To recover in an action for brokerage or commissions for a sale of real property, two things are necessary to be established: 1. That the plaintiff was employed to make the sale. 2. That in pursuance of his employment, he found a purchaser in a situation ready and willing to complete the purchase on terms agreed upon. (*McGavock* v. *Woodlief*, 20 How. 221; *Middleton* v. *Findla*, 25 Cal. 76; *Phelan* v. *Gardner*, 43 id. 306.)

It appears by the record, that in the year 1876 the defendant was engaged in opening the mine referred to, and at the same time trying to sell it. While so engaged, he availed himself of the proffered services of the plaintiff, who resided in San Francisco, to buy for him certain articles of machinery for a five-stamp mill, which he was putting up on the mine, and to forward them to him. He had bonded the mine to a party, and others were examining it with a view of purchasing it, but they all failed him; and becoming anxious to sell, as he had not the requisite means to develop it, he wrote to plaintiff on the 16th of January, 1877, as follows:

"What I want is means to open the mine properly, or to sell it. * * * Now, I would like you to see it, and you could get a party to buy, so as you could make $5,000 or $10,000. I would like you to make it sooner than any one else. When you answer this, I will tell you in my next letter what I will take for the mine. * * * Write soon, and let me know if you

can get parties to buy. *But I reserve the right to sell as soon as I can.*"

In answer to this letter, the plaintiff wrote on the 22nd of January, 1877: "If I can, I will go up to see you, and probably be able to do something for you. * * * Let me know, when you write again, how much it will take to put an incline from the tunnel to the mill. Let me know all the particulars, and your lowest price for the mine. You know it will be secret between you and I. I only want to know how to work. I will do my very best for you." On the 14th of March, 1877, defendant wrote again to the plaintiff, as follows: "I must sell the mine, or part of it. * * * There is fine rock in the level where the vein was solid, but I can't get it without a pump. The mine is a good one, but the opening of it is heavy on me. If you can't get more than $15,000, let it go, and I will give you $5,000."

These letters evidence a proposal by the defendant and an acceptance by the plaintiff. The acceptance was of the whole of the terms of the proposal; for where one proposes to another a contract, it must be wholly accepted or rejected; it cannot be accepted with a difference of terms. (*Strong* v. *Catlin*, 35 Ala. 611.) An acceptance must be absolute and identical with the terms of the proposal. When, therefore, the plaintiff accepted the terms contained in the letters of the defendant, the letters constituted a binding executory contract between the parties, by the terms of which the plaintiff engaged himself as a special broker to sell the mine for defendant, with the measure of his brokerage or compensation fixed and agreed upon, reserving to the defendant himself the right to sell.

Within the scope and warrant of the terms of this contract, the plaintiff had authority to sell; but this authority was limited by the right reserved by the defendant. Under this right the defendant, if he sold the mine, would not be liable to pay the plaintiff commissions; he undertook only to pay for a sale effected through the agency of the plaintiff. This right existed in the defendant, independent of the reservation of it in the contract; for a party who employs a broker to sell real estate may, notwithstanding, negotiate a sale himself, and if he does so without any agency of the broker, he is not liable to him for

commission. To earn his commission, the broker must be an efficient agent in, or the procuring cause of, the contract. (*McClave* v. *Paine*, 49 N. Y. 563; *Wylie* v. *Marine National Bank*, 61 id. 415.)

Now, the mine was actually sold to the person referred to in the pleadings, on or about the 20th of May, 1877, for $20,000, $5,000 of which were paid, and the balance was secured by a promissory note, payable in eight months, and the payment thereof secured by a mortgage upon the mine. But the plaintiff did not find the purchaser, nor make the sale, nor assist or co-operate in making it, nor was he the procuring cause of it. The defendant himself negotiated and completed it entirely independent of the plaintiff. It is true that there is some conflict in the testimony upon the subject, but it is not substantial. There is a great preponderance of the evidence in favor of the defendant. The plaintiff himself, in his testimony, says: "I have brought this action for money coming to me for his (the defendant) selling the mine. I expected the money if he sold the mine." He admits that he never spoke to the purchaser about buying the mine, and that he was wholly unacquainted with the man until introduced to him by the defendant, after the mine had been sold. "I knew Thomas," he says, "but was not acquainted with him until about the 12th or 14th of May, or along about there, when I had an introduction to him." Nor did he ever attempt to see him about purchasing, although he was well aware of the fact that the defendant had been for several months trying to negotiate with Thomas for a sale.

He says: "I did not go down to see Thomas to push this trade, because I thought I had other better parties than Mr. Thomas at this time—men who would give more." And he never claimed that he had anything whatever to do with the sale, until after it had been negotiated and closed by the defendant. After that, he claimed that he had found Thomas as a purchaser, because he had written to the defendant to come down to the city and sell the mine to any one who would buy.

To this question, namely: "And you claim that you discovered Mr. Thomas as a purchaser of the mine; that it was through your efforts?"—he answered: "On the last, when a negotiation was made and the purchase closed. I claim I did.

I claim that I wrote for the defendant to come down to close the sale of this mine with any man that would give us the best terms." On the 1st of May he had written to the defendant that he had sold the mine, or was in a fair way to sell it, to a New York company for $30,000; and he wrote: "You will either have to come down or send me a power of attorney when I notify you." But on the 14th of May he wrote again, to the effect that nothing could be done: "You must come down right away; and if we cannot sell it, we will borrow some money upon it. * * * I do not see now any other thing for you to do than to come down to the city to make some arrangement, for I have no authority to do anything."

The efforts to sell to a New York company were made on the plaintiff's behalf, by one with whom he had promised to divide his commission, in case he effected a sale. But he said to him, at the same time, "If we do not sell within a day or two, or get some one interested in the property to examine it, Scanlan (the defendant) will sell it to Mr. Thomas, and there is no commission in it for us."

The defendant, after these letters, came down to San Francisco, and finding that plaintiff had not and could not effect a sale, he resumed negotiations with Thomas, and sold the mine to him. In these negotiations the plaintiff did not in any way participate.

Of course, if the plaintiff had found Thomas as a purchaser, and brought him and the defendant together, or if he had told Thomas that the mine was for sale, and the defendant that Thomas wanted to buy, and if, under these circumstances, the defendant had taken the negotiations of sale into his own hands, and effected a sale, he could not refuse to pay the plaintiff the stipulated commission. The commission of a broker is earned by finding a sufficient purchaser ready and willing to enter into a valid contract for the purchase, upon the terms fixed by the owner; and having introduced such a one to the owner as a purchaser, he is not deprived of his right to commission by the owner negotiating the contract himself. (*McClave* v. *Paine*, *supra; Lyon* v. *Mitchell*, 36 N. Y. 235; *Jewett* v. *Emson*, 2 Robt. 167.) But none of these things were done by the plaintiff. No positive act or word proceeded from him which origi-

nated, aided, or co-operated in the negotiations with Thomas, or in the final transaction of sale to him. The testimony of the plaintiff upon that subject concludes him.

Unquestionably, the plaintiff, personally and jointly with a third party, expended some time and labor in trying to find a purchaser, and to negotiate a sale, but his efforts were unsuccessful, and after the sale had been made by the defendant, he rendered some services to the defendant by introducing him to a lawyer who supervised the papers of the sale which had been prepared by the attorney of the purchaser. But these services, rendered after the sale, were not " within the encompassment and drift " of the plaintiff's employment, and none of the services which were rendered were assistant to the sale. Neither for them, nor for his unsuccessful efforts in finding a purchaser, is the plaintiff entitled to commission. The essence of his contract was the obtaining of a purchaser. (*Lincoln* v. *McClatchin*, 36 Conn. 136.)

Judgment and order reversed.

Ross, J., and McKinstry, J., concurred.