[Civ. No. 1480.    Second Appellate District.—April 3, 1914.]

CARL HAGEMAN, Respondent v. CHARLES F. O'BRIEN et al., Appellants.

BROKERS—CONTRACT BETWEEN BROKERS TO SELL REAL ESTATE—NATURE OF AGREEMENT FOR COMMISSIONS.—In this action by one real estate broker against other brokers to recover compensation for assisting them in making sales of land, the contracts for compensation, while in the form of letters agreeing to pay a commission, are in substance agreements to share commissions received by the defendants from the owner of the land.

ID.—SALE OF REAL ESTATE—CONTRACT BETWEEN BROKERS TO SHARE COMMISSIONS—NECESSITY OF WRITING.—Where one real estate broker arranges with another broker to assist in selling land, an agreement to pay for such services need not be in writing. Subdivision 6 of section 1624 of the Civil Code, which requires contracts for the employment of real estate brokers to be in writing,

is designed only to protect owners of real property against unfounded claims of brokers; it does not extend to agreements between brokers to co-operate in making sales for a share of the commissions.

ID.—ASSISTANCE OF ONE BROKER BY ANOTHER IN MAKING SALE—RIGHT TO COMMISSIONS.—Where real estate brokers, who have authority from the owner to sell land, make an agreement with another broker providing for the payment of a commission to him on all of the land sold through his assistance, whether the sales are closed directly or indirectly by him, it is necessary only for him to show, in his action against them to recover commissions, that he rendered substantial services in connection with sales, even though the actual transaction with the purchasers was concluded by or through the defendants; he need not prove that he alone was the efficient or procuring cause of the sales.

ID.—ACTION TO RECOVER COMMISSIONS—SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS.—In this action by a real estate broker to recover commissions from other brokers under an agreement by them to pay him a commission on all lands sold through his assistance, the evidence supports the findings that the plaintiff procured purchasers for the lands as claimed, at least to the extent that he rendered such services in connection with sales as would be sufficient to entitle him to compensation under the contract.

ID.—CONDUCT OF TRIAL—SUGGESTION BY COURT AS TO SHORTENING OF EVIDENCE.—The mere fact that the judge presiding at a trial gives out some expression of opinion for the guidance of counsel during the progress of the case and suggests the shortening or condensing of the testimony to be given, does not constitute a denial of the right to offer evidence and is not error.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. W. M. Conley, Judge. presiding.

The facts are stated in the opinion of the court.

Frank James, for Appellants.

Samuel G. Tompkins, for Respondent.

CONREY, P. J.—This action is prosecuted by the plaintiff, a real estate agent, to recover commissions from the defendants, who also are real estate agents. The claim is based upon an alleged contract for services rendered by the plaintiff in connection with sales of land belonging to a cer-

tain corporation. Judgment was rendered in favor of the plaintiff, and defendants appeal from an order denying their motion for a new trial.

The lands that were sold are in Mexico. The defendants had their principal place of business in San Fransciso, and the plaintiff was located in the county of Santa Clara. The defendants being the authorized agents for the sale of said lands, delivered to plaintiff a letter dated October 22, 1908, in which they agreed to pay plaintiff "a commission of 5% on all the land we sell through your assistance, whether they are closed directly or indirectly by you." Defendants also delivered to plaintiff a letter, dated November 5, 1908, in which they said: "If you desire to operate in San Luis Obispo and Monterey counties, in the sale of the Yaqui Valley lands controlled by us, we will pay you a commission of $6 per hectare on all land sold by you, commission payable to you as and when received by us. All sales to be made through this office and subject to our approval. We will furnish you printed matter, such as we have, and will assist you in every way possible. It is understood, however, that you are to pay your own expenses such as office, advertising, commissions to sub-agents, etc." Of the sums included in the judgment in this action, one hundred and sixty dollars was allowed as a commission to plaintiff under the five per cent agreement for land sold to G. B. Seely of Santa Clara County. The remainder of the judgment is on account of lands sold to James Martin, D. McFadden, W. H. Martin, and H. Bardin, severally, who were residents of Monterey County.

Among the grounds asserted in support of the motion for a new trial, appellants specify that the evidence is insufficient to support the court's findings wherein it was determined that the defendants employed plaintiff and agreed with him for commissions as alleged in the complaint, and was further determined that pursuant to said agreement plaintiff procured purchasers for portions of said lands, as alleged in the complaint and set forth in the findings of fact. Appellants' first point in the argument is that the writings offered in evidence are insufficient to constitute a contract within the meaning of subdivision 6 of section 1624 of the Civil Code, which appellants claim is applicable to this case. The transactions between plaintiff and defendants here and their

relations to each other and to the property, were not such as to bring the case within the terms of that statute. The defendants were not owners employing plaintiff to sell their land. They were merely agents arranging with another agent to assist in the business of their agency. An agreement to pay for such services does not require a writing to establish its validity. The above mentioned provision of the Civil Code is to the effect that an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission, is invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent. "That provision was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to co-operate in making sales for a share of the commissions." (*Gorham* v. *Heiman,* 90 Cal. 346, 358, [27 Pac. 289, 292]; *Baker* v. *Thompson,* 14 Cal. App. 175, [111 Pac. 373].) While in form the letters of defendants to plaintiff were agreements to pay a commission, yet in substance they were to share the commissions received by paying the specified sums to plaintiff as and when the commissions were received by the defendants from the owner of the land.

It is next contended that plaintiff did not render the services necessary to entitle him to commissions under the agreement as made. Various decisions are cited to show that before plaintiff could recover herein, he must prove that he alone was the efficient or procuring cause of the sales. Appellants rely upon *Armstrong* v. *Wann,* 29 Minn. 126, [12 N. W. 345]; *Waterman* v. *Boltinghouse,* 82 Cal. 659; [23 Pac. 195]; *Dolan* v. *Scanlan,* 57 Cal. 261. It is further contended that where several brokers contribute something toward the consummation of a sale under brokerage agreements which are not exclusive, the owner is not liable to all of the brokers but only to that one who is the predominating efficient cause of the sale, citing *Glascock* v. *Van Fleet,* 100 Tenn. 603, [46 S. W. 449]. Under this and other decisions it is claimed that under the circumstances of this case the defendants had the right to make the sales themselves without becoming liable to plaintiff for commissions. Assuming that the decisions

24 Cal. App.—18

above noted and others referred to in the brief of appellants' counsel are sufficient authority for the rule as stated, and that such rule is enforceable as between a real estate agent or broker and a landowner who has employed him to make sales, it does not necessarily follow that this rule is applicable as between brokers acting together for the sale of land and where the agreement between the brokers is in terms like those between the parties to this action. The first agreement applies specifically to lands sold by the defendants through the assistance of the plaintiff. The second agreement· also provides that the sales shall be made through the office of the defendants and that the defendants would assist the plaintiff in every way possible in the efforts made by him to sell those lands. It is only necessary for the plaintiff to show that he rendered services in connection with the sales made and that those services were substantial in character, even though the actual transaction with the purchasers was concluded by or through the defendants. There is in this record evidence which substantially supports the findings of the court in favor of the plaintiff with respect to the rendering of these services. This being so, the. findings must be sustained. As to the sale to Seely, a resident of Santa Clara County, it is shown that the plaintiff called upon Seely and talked about those lands to him, and that subsequently the sale to Seely was closed up through the defendants. With respect to the other purchasers, residing in Monterey County, the facts in general outline are as follows: The plaintiff had advertised these Yaqui Valley lands in Monterey County and had directly interested Henry Bardin as a prospective purchaser. William Martin had become interested in the subject of these Yaqui Valley lands and had talked with several people about them. He was acquainted with the plaintiff before he went to Mexico, having been introduced to plaintiff by a sub-agent of plaintiff, and he received from them some of plaintiff's pamphlets. His testimony is that plaintiff did not influence him to go to Mexico and that one Wellbank, with whom he had business in San Francisco, suggested to him that if he would go directly to the owners and buy from them he might be able to make a better bargain than by dealing with the agents. With this idea in mind, William Martin procured

James Martin and McFadden to go with him on the trip
to Mexico which resulted in their purchasing the lands.  Plain-
tiff having learned that William Martin and his party had
started for Mexico, took with him Henry Bardin and fol-
lowed the other party on the next train, overtaking them in
Arizona, and the entire party traveled south on the same
train to a point near the location of the Yaqui Valley lands.
There the defendant Garrett was on the ground ready to
meet purchasers.  Garrett and Hageman were both active
in showing the lands to these visitors, and sales resulted
which were closed by Garrett before the parties returned to
California.  Immediately before the plaintiff returned home,
Mr. Garrett gave him a memorandum in Garrett's handwrit-
ing containing the names of James Martin, W. H. Martin, D.
McFadden, and Henry Bardin, with figures showing the num-
ber of hectares purchased by each one, together with the figures
1030 (being the total number of hectares) multiplied by 6,
making a total of six thousand one hundred and eighty dol-
lars.  After arriving at his home in California the plain-
tiff reported these sales by letter to the office of defendants
in San Francisco, and upon the faith of that report the
bookkeeper of defendants gave him credit for the claimed
commissions.  After Garrett's return to San Francisco, the
defendants repudiated the credit thus given and took the
position that the plaintiff had not earned those commissions,
except with respect to three hundred hectares sold to Henry
Bardin.  They paid him one thousand eight hundred dol-
lars on account of the Bardin sale.  Some weeks later they
sold to Henry Bardin an additional one hundred hectares
of adjoining land to that which he first purchased, and the
judgment here includes six hundred dollars allowed to plain-
tiff as a commission arising out of that additional sale.  The
witnesses McFadden and James Martin, like the witness W.
H. Martin, testified in substance that they were not influenced
by the plaintiff to go to Mexico or to purchase said lands.
Without repeating details of testimony any further, it is
sufficient to say that, in our opinion, the evidence is ample
to support the findings that the plaintiff procured purchasers
for these lands as stated, at least to the extent that he rend-
ered such services in connection with those sales as would be

sufficient to entitle him to compensation under the contracts the substance of which we have stated.

Finally, it is claimed on behalf of appellants that they should have a new trial on account of surprise which ordinary prudence could not have guarded against, and on account of irregularities in the orders of the court by which defendants were prevented from having a fair trial. With respect to these grounds of the motion, an affidavit was filed setting forth a part of the record, and it is claimed that by reason of the facts therein stated the defendants were prevented from presenting evidence material to their case. The defendant Garrett was on the witness stand and was giving testimony as to what happened while the parties were in Mexico, and it is claimed that defendants were proceeding to show by him that the sales were made by him and not by plaintiff and that plaintiff was not the inducing cause thereof. The judge presiding at the trial suggested that his opinion at that time was that, unless the influence which induced the purchasers to go down to the Yaqui Valley originated in Monterey County, then he must take the testimony of the purchasers, whose depositions were on file, rather than that of the real estate men. "Unless plaintiff was instrumental in causing those people to leave Monterey County and go there, why he stands on very dangerous grounds, so far as his operations were concerned. I will give that very little consideration in the final judgment in the case." . . . "I think we can shorten it up. I don't think there is any material dispute as to the transactions down there. If there was it would amount to nothing. Whether the plaintiff was there, or Mr. Garrett was there at the time that the agreement or bargain was struck, that don't make any difference, as long as they were acting in concert." After some further discussion, counsel for defendants desisted from offering further testimony of the witness with regard to the transactions in Mexico. No definite offer of testimony was made, or ruling thereon demanded of the court, more than the explanation of counsel that he was endeavoring to discover to the court what was the inducement or incentive to the parties to purchase this property, and that in offering the testimony he was dealing with motive or producing cause with respect to those sales, and proposing to show that nothing was done

down there by Mr. Hageman to produce a new incentive or inducing cause to the making of those sales. It is now claimed that the defendants were misled by these interruptions and suggestions of the court and that this is shown by the fact that the judge stated that he gave judgment in favor of the plaintiff upon the ground, among others, that "defendant Garrett's conduct and acts alone from the time he met the parties in Mexico until the last sale was made to W. H. Bardin in Salinas would justify the court in rendering judgment in favor of plaintiff." This statement by the judge is not found in the findings of fact and must have been merely a part of the opinion or statement by the judge in announcing what his decision would be. Even if, in passing upon the question of error in denying the motion for a new trial, we could consider the opinion or statement thus made by the judge, it would not alone be sufficient to show that defendants were prevented from having a fair trial. This question must be determined from the record of proceedings at the trial taken in connection with the findings of fact. This record, the essential part of which we have stated, does not support the claim of appellants respecting this matter. The mere fact that the judge presiding at a trial gives out some expression of opinion for the guidance of counsel during the progress of the case and suggests the shortening or condensing of the testimony to be given, does not constitute a denial of the right to offer evidence and is not error. In the absence of a contrary showing, it must be presumed that the court would not have denied the right of the party to produce in evidence any fact material to the case. Furthermore, we are not convinced that the suggestions made by the judge were out of place under the circumstances then appearing.

The order denying the motion of defendants for a new trial is affirmed.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 30, 1914, and a petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on June 2, 1914.