[Civ. No. 1473.    Third Appellate District.—February 11, 1916.]

## G. B. HELLINGS, Respondent, v. J. W. WRIGHT, Appellant.

REAL ESTATE BROKERS—DIVISION OF COMMISSIONS—UNEQUAL PROPORTIONS—STATUTE OF FRAUDS.—An oral agreement between real estate brokers to divide commissions on sales of real estate in unequal proportions is not within the statute of frauds.

ID.—ACTION TO RECOVER COMMISSIONS—PLEADING—COMPLIANCE WITH AGREEMENT—SUFFICIENCY OF COMPLAINT.—In an action brought to recover commissions due under such an oral agreement, the omission to allege in the complaint that the plaintiff "obtained agree-

ments from purchasers to pay the balance in monthly installments," etc., which was part of the sale plan, does not destroy the sufficiency of the complaint, as against a general demurrer, where it is alleged that sales were made under such plan, and that monthly payments were made by the purchasers.

ID.—OMISSION TO SIGN COMPLAINT—WAIVER.—The omission to sign a complaint is not jurisdictional, and the defect is waived where no objection is made thereto in the trial court.

ID.—PERFORMANCE OF CONTRACT WITHIN YEAR—STATUTE OF FRAUDS.— An oral agreement between real estate brokers to make sales and divide commissions is not void under subdivision 1 of section 1624 of the Civil Code, where the employed broker could sell for cash or on the installment plan for a sufficient amount so that his commissions could be paid within the year.

ID.—AGREEMENTS NOT PERFORMABLE WITHIN YEAR—CONSTRUCTION OF STATUTE.—The statute does not declare void a contract which may not be performed within a year, or which is not likely to be performed within that period, but it includes only agreements which, fairly and reasonably interpreted, do not admit of a valid execution within the year.

ID.—PERFORMANCE OF CONTRACT WITHIN YEAR—PAYMENT OF CONSIDERATION AFTER YEAR—INSUFFICIENT DEFENSE TO RECOVERY.— When a contract has been so far performed that nothing remains to be done but the payment of the consideration for the performance, the fact that the contract does not require the payment within a year furnishes no defense to an action for the price.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Gerald C. Halsey, for Appellant.

Frank A. Duryea, for Respondent.

BURNETT, J.—The action was brought to recover commissions due under an oral agreement between plaintiff and defendant, both being real estate brokers. The agreement was that plaintiff, on behalf of defendant, should procure purchasers for lots in Richmond Tract No. 2, Contra Costa County, plaintiff to sell for cash, if possible, and if not, then on the installment plan, so much to be paid monthly by the purchaser and plaintiff's commissions to be paid by defendant

at the rate of one-half of the monthly payments paid in on sales made by plaintiff individually, and one-third of the monthly payments on sales made by plaintiff jointly with any other salesman; settlement to be made between the parties on the first of every month until the whole of plaintiff's commission should be paid.

The defendant had a contract in writing, duly subscribed by the owner of the lots, for the sale thereof on a commission of twenty-five per cent of the sale price, and plaintiff's commissions were to be fifteen per cent on sales made by him alone and seven and one-half per cent on sales made by him and any other salesman acting together. The plaintiff thereafter sold a certain number of lots and also a certain number in conjunction with one M. E. Dunn. Settlement between the parties was regularly had each month until about January 1, 1911, at which time plaintiff ceased selling said lots. Such settlement was made on statements rendered by defendant. One of these statements appears in full in the transcript, and it shows the names of the purchasers, a description of the lots sold, plaintiff's commissions, the amount theretofore paid plaintiff, and the amount due January 3, 1911. Said statement corresponds with that set out in the complaint herein, except in a few unimportant particulars. The testimony shows that from and after January 1, 1911, monthly payments were made by the purchasers of lots sold as aforesaid by plaintiff, and that the defendant received his commissions therefor in accordance with his written contract with the Central Richmond Land Company, but that he failed to pay plaintiff his commissions thereon. No evidence was offered by defendant, but it is insisted that the judgment is erroneous for several reasons, which we proceed to notice.

1. The first contention is that the contract being oral could not be enforced by reason of the statute of frauds. A sufficient answer to this claim is found in the following decisions: *Gorham* v. *Heiman,* 90 Cal. 346, [27 Pac. 289]; *Aldis* v. *Schleicher,* 9 Cal. App. 372, [99 Pac. 526]; *Casey* v. *Richards,* 10 Cal. App. 57, [101 Pac. 36]; *Saunders* v. *Yoakum,* 12 Cal. App. 543, [107 Pac. 1007]; *Baker* v. *Thompson,* 14 Cal. App. 175, [111 Pac. 373]; *Johnston* v. *Porter,* 21 Cal. App. 97, [131 Pac. 69]; *Hageman* v. *O'Brien,* 24 Cal. App. 270, [141 Pac. 33].

In the Gorham case, *supra,* it is said, in reference to the complaint, that "It shows an agreement to co-operate in obtaining authority to sell, and in selling, a mine for an equal share of the commissions. It shows that the agreement was acted upon. It shows performance on the part of plaintiffs, collection of the commissions by appellants, and refusal to divide. Certainly this establishes a cause of action if the agreement was valid, and we know of no ground upon which it can be held invalid. Counsel seem to rely on section 1624 of the Civil Code, subdivision 6. But, clearly, that provision was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to co-operate in making sales for a share of the commissions."

In the Aldis case it is said: "Conceding that the compensation recoverable by a broker for selling real estate is the subject of an oral contract between him and another, under which agreement the latter is to recover the commission for effecting the sale, nevertheless, a complaint, in order to state a cause of action upon such oral contract, must allege that the one from whom it is sought to recover was by his principal authorized in writing to effect a sale."

So in the Casey decision it is said: "The contract of employment by an authorized broker of the plaintiff as an assistant under an agreement to share commission is not required to be in writing under the statute of frauds."

In the Hageman case it was held that, while the agreement between the brokers was to pay a definite commission, it was in effect an agreement to share commissions and hence was enforceable.

Some of the foregoing cases probably attach conditions to the enforcement of such claim that a just view of the law does not exact, but there can be no question that the facts here meet every requirement of the rule. It clearly appears, in the first place, that defendant had a written contract with the owner for the sale of said property and for the payment of a specific commission, and that he employed plaintiff to assist in the sale of said property. Furthermore, that he agreed to pay him a certain commission for every lot that he sold. This amounted, of course, to an agreement to *share* the commissions, since defendant was to obtain twenty-five per cent from the owners and of this the former was to pay to plaintiff

fifteen per cent. In other words, it was to be divided in the ratio of fifteen to ten between plaintiff and defendant. *To share* does not demand necessarily an equal division. - Defendant was *to share* with plaintiff because he was to receive from the owner the whole of the commission, and he was to divide it in a certain proportion with plaintiff. It further appears that the lots were sold by plaintiff, that defendant received the commission from the owner and failed to divide as he agreed. We know of nothing more required to entitle plaintiff to recover, and we do not hesitate to say that the statute of frauds, as interpreted by the courts, has no applica- . tion to this case.

2. Appellant contends that the complaint fails to state a cause of action in consequence of the omission of an allegation that plaintiff "obtained agreements from purchasers to pay the balance in monthly installments," etc. The contention is based upon the familiar principle of practice that the complaint must aver a performance of the acts required of plaintiff to entitle him to relief.

While the complaint could have been more explicit in the respect indicated, we are emphatically of the opinion that it is sufficient as against a general demurrer. There is an allegation that "Thereafter and prior to January 1, 1911, plaintiff, under and by virtue of said agreement between himself and said defendant, sold by himself sixty-one of said lots on the said monthly payment plan," etc. It simply amounts to this: Plaintiff alleges that he had a certain agreement with defendant to sell land upon a certain plan, and that he did sell it on the said plan. This necessarily implies that he complied with the terms contained in the plan. Moreover, a certain exhibit "A" is made a part of the complaint, and it is alleged that it contains a "description of said lots so sold by plaintiff individually, and of such lots so sold by plaintiff in conjunction with said M. E. Dunn separately listed and described, together with the sale price of each lot; the commissions earned by plaintiff on such sale prices, and the *monthly payments to be made* on each such lots by the purchaser thereof." There is also an allegation that the said monthly payments were made by the purchasers. No one reading these averments in connection with the other parts of the complaint would have any trouble in drawing the inference that said purchasers agreed to make said monthly payments.

Moreover, this objection is of such nature that it should have been made at the trial. When evidence was offered of the execution of said contracts this specific ground of objection was not pointed out, and appellant should not be heard now to urge this purely technical consideration. In *Greiss* v. *State Investment Co.*, 98 Cal. 244, [33 Pac. 195], it is said: ''It is unfair for a party to withhold an objection founded upon a defect, which, if pointed out in time, might be remedied, until it is too late to correct the defect, thereby inducing an opponent to rely upon his pleading as sufficient, in order that he may have a fatal objection. Such course is a fraud upon justice and prevents a fair trial. It is therefore not tolerated.'' (See, also, sec. 475, Code Civ. Proc., and *First Nat. Bank* v. *Henderson*, 101 Cal. 307, 312, [35 Pac. 899].)

3. It seems that the complaint was not signed by the plaintiff or his attorney, and of this appellant complains, but it is too late to take advantage of it where no objection was made in the lower court. It is a mere matter of form and could and would, of course, have been remedied if attention had been called to it below.

In *Meyer* v. *Delaware R. R. Const. Co.*, 100 U. S. 457, [25 L. Ed. 593], the complaint was filed in the state court but was not signed by either the plaintiff or his counsel. The cause was removed to the federal circuit court and the objection that the complaint was not signed was first raised there. On appeal the supreme court said: ''No objection was made on this account in the state court, and it came too late in the circuit court. If it had been made in the state court, the defect, if in fact there was one, would no doubt have been cured at once by the signature of counsel.''

In *Louisville etc. Ry. Co.* v. *Peck*, 99 Ind. 68, it was said: ''The statute requires that pleadings shall be subscribed by the party or his attorney, but as there was no motion to strike out or reject the paragraph, and the defect is one that might have been cured by amendment below, it will not be regarded on appeal.''

In *Sims* v. *Dame*, 113 Ind. 127, [15 N. E. 217], it is said: ''The failure of both a party and his attorney to subscribe the complaint constitutes only a formal or clerical defect which is amendable in the *nisi prius* court.''

Here it is to be noted that the amended complaint is verified by the attorney for plaintiff, and defendant could, there-

fore, be in no doubt as to his identification, nor could he have suffered any detriment by the omission complained of.

In *Canadian Bank of Commerce* v. *Leale,* 14 Cal. App. 307, 309, [111 Pac. 759], it is said: ''While there is some authority in other jurisdictions to the effect that an unsigned pleading is a nullity, . . . the weight of authority is to the effect that the omission of the signature to a pleading is but an irregularity that does not affect the jurisdiction of the court and may be cured by amendment.'' (Citing cases.)

We think there can be no doubt that said defect is not jurisdictional, that appellant waived it by making no objection in the court below, and that it would be manifestly unjust to take cognizance of it at this time.

4. The contract between plaintiff and defendant was not void by virtue of subdivision 1 of section 1624 of the Civil Code concerning ''an agreement that by its terms is not to be performed within a year from the making thereof.'' As pointed out by respondent, appellant confuses said agreement with the contracts procured by plaintiff from the purchasers. Plaintiff's contract could be performed within a year. He could sell for cash or on the installment plan for a sufficient amount, so that his commissions could be paid within the year, as the buyer on the installment plan was to pay *not* less than five dollars per month.

The statute does not declare void a contract which may not be performed within a year, or which is not likely to be performed within that period. It includes only agreements which, fairly and reasonably interpreted, do not admit of a valid execution within the year. (*Bank of Orland* v. *Finnell,* 133 Cal. 475, [65 Pac. 976]; *Stewart* v. *Smith,* 6 Cal. App. 152, [91 Pac. 667]; *Blair Town Lot etc. Co.* v. *Walker,* 39 Iowa, 406; *Plimpton* v. *Curtiss,* 15 Wend. (N. Y.) 336.) In the last mentioned case it is said: ''The agreement set forth in the declaration in this case is not for the building of a house after the expiration of one year, but that it shall be performed at the furthest within fifteen months. There is nothing in this agreement prohibiting the defendant from completing the contract within six months or a shorter period. Suppose he had done so, and sued the plaintiff for compensation for his labor and material found, would it have been permitted to the plaintiff to have said that the contract was not to be performed within a year, and therefore not obligatory

upon him? Most clearly not. And if obligatory upon one party, it is equally so on the other. The defendant might have performed the contract within a year, and therefore it is not within the statute.''

As a matter of fact, plaintiff here performed his contract within the year, and so nothing was left but the payment of the consideration.

''When a contract has been so far performed that nothing remains to be done but the payment of the consideration for the performance, the fact that the contract does not require the payment within a year furnishes no defense to an action for the price.'' (20 Cyc. 296, [note 13 and cases there cited].)

Moreover, our attention is called to the evidence of a letter written by appellant wherein he promised to pay respondent's commissions. Thus unmistakably was the case taken without the operation of said statute of frauds.

5. Appellant complains because the court reopened the case and allowed plaintiff to offer additional evidence after a motion had been made for a nonsuit. The purpose was to clear up any uncertainty as to whether plaintiff had obtained the required contracts from the purchasers to whom he had sold the lots on the monthly installment plan. Such action was not only within the discretion of the trial judge, but it was plainly his duty to see that the cause should not be defeated by the mere inadvertence of counsel for respondent. It seems sometimes to be thought that the highest prerogative of the trial court is to conduct the proceedings so that the cause may be won or lost by virtue of some technical advantage. The truth is, of course, that the trial court should see, if possible, that the case is tried upon its merits and decided fairly and justly.

6. But the main contention of appellant seems to be that the evidence was insufficient to support the findings, and particularly the one that respondent secured contracts of purchase on the installment plan from the various purchasers. Appellant insists upon this point both in his opening and reply briefs. In the latter he declared: ''The plaintiff agreed as part of his bargain with defendant to obtain agreements from all of the purchasers to pay the balance in monthly installments of not less than five dollars until the whole sale price should be paid. Plaintiff offered no evidence whatso-

ever to show that he had actually done the work of securing signed contracts from the various purchasers to pay the purchase prices on the installment plan at the sale prices designated by the defendant for the sale thereof. There was absolutely no evidence that it was the plaintiff who induced all of the various purchasers to enter into written contracts on the installment plan at the sale prices designated by the defendant. There was absolutely no evidence introduced to show that the plaintiff had ever obtained any contracts whatsoever for the defendant or that he had ever turned over to the defendant any contracts whatever.'' This sweeping statement is certainly entitled to some consideration, because it will not be disputed that therein is involved a vital element of the cause of action.

The record, however, furnishes a complete refutation of appellant's claim in that regard. Plaintiff testified that the defendant ''said he would employ me to sell lots on the basis of fifteen per cent of the selling price and I was to receive one-half of the first payment and one-half of the subsequent payments that were paid in by the purchaser; a statement was to be rendered on the first of every month by him to me. . . . He gave me instructions on the terms of sale, to accept from ten to twenty-five dollars down or thereabouts and generally five dollars per month.'' Furthermore, that he consented to these terms and started to work right after that to sell lots; that the exhibit attached to the complaint showing the names of all purchasers of lots sold by him individually and in conjunction with M. E. Dunn, the description of the lots, amount of commission, and the amount of the monthly payments, was correct; that statements were rendered him by defendant each month up to January, 1911 (the last one being set out in full in the transcript), and that said list contained ''the names of purchasers of lots'' to whom he had sold himself and in conjunction with M. E. Dunn, together with a description of the lots he had sold for defendant.

Certainly it is a fair inference from the foregoing that plaintiff had fully complied with the conditions of his contract. But the evidence is even more specific as to the contracts of purchase. One of these contracts is set out in full, having been executed by George Twigg, who is shown in plaintiff's exhibit to have been one of the purchasers. The other contracts were all received in evidence and they were identi-

29 Cal. App.—42

fied by plaintiff as those obtained by him. That no question may remain, we quote from the record of the testimony of witness Rihn and of plaintiff after they were recalled: "Q. Mr. Rihn, have you got as secretary of the Central Richmond Land Company, the contracts in writing between the Central Richmond Land Company and the purchasers of lots as shown in this statement as prepared by you and which you submitted a few minutes ago? A. Yes. Q. Will you produce them, please? (The witness here produces certain papers.) Q. The contract with George Twigg—is that the contract you have in your hand there? A. Yes. Q. They are all in the same form, Mr. Rihn? A. Yes. Mr. Duryea: You know the signature of the president of the Central Richmond Land Company? A. Yes. Q. Are these the signatures of the president and secretary of the Central Richmond Land Company? A. Yes."

Mr. Hellings' testimony then appears as follows: "Q. I will ask you, Mr. Hellings, if you saw George Twigg sign that document? A. I did. Mr. Halsey: I will admit those signatures are genuine."

Mr. Rihn, furthermore, in his testimony gave the names "of the purchasers under each of those contracts and the numbers of the contracts, all of which contracts were considered read in evidence." Then the examination of plaintiff continued: "Q. Are those the contracts which were delivered to you in blank at the time you made the agreement? (Referring to contracts of sale identified by witness Rihn and read in evidence.) A. The same contracts. Q. Were those the contracts you used in obtaining purchasers for the lots? A. They were."

In view of the foregoing, how it is possible for anyone to maintain that there is no evidence that plaintiff obtained contracts of purchase from the purchasers is not readily apparent. We do not feel called upon to pursue the subject any further. We are convinced that none of the points made by appellant possesses any substantial merit, and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 6, 1916.