CONNERTON, Respondent, vs. ANDREWS, Appellant.

*October 14, 1927—April 3, 1928.*

*Brokers: Agreement to pool commissions: Validity: Statute of frauds.*

1. An agreement between real-estate brokers to pool commissions realized from a sale of property is not contrary to public policy on the ground that the brokers represented opposite sides, where the transaction was open and above board as to all parties, and where the purchaser's agent, who by agreement was to receive a commission on all lands purchased for his principal, waived his commission in order to induce the purchase. p. 435.
2. Nor is such agreement within the prohibition of sec. 240.10, Stats., requiring contracts to pay a commission to a real-estate agent to be in writing, which does not apply to contracts between brokers for a division of commissions. p. 437.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

Action begun December 7, 1925; judgment entered March 8, 1927. Action on contract to recover balance due on commission for sale of real estate. The plaintiff and the defendant are licensed real-estate dealers. In the year 1923 the plaintiff and defendant entered into an oral agreement by the terms of which the defendant agreed in the event of the sale of certain property known as the Wakefield property, for which property the defendant was a sales agent under an exclusive agency contract, that the defendant would pay the plaintiff $1,000, one P. F. Dolan $1,000, and retain $1,000

himself. At the same time it appears the plaintiff was purchasing agent for the Diamond Lumber Company, which afterward became purchaser of the lands in question, and that the plaintiff had an arrangement with the Diamond Lumber Company whereby he was to receive one dollar per acre for all lands purchased by the company through the plaintiff. As a result of the negotiations it was finally agreed that the plaintiff should waive his commission of one dollar per acre in order to induce the Diamond Lumber Company to purchase the lands. There was some dispute as to the making of the oral contract, but upon the trial the issue was submitted to the jury and the jury found in favor of the plaintiff's contention. After the sale of the lands to the Diamond Lumber Company the defendant wrote the plaintiff under date of October 6, 1923, as follows: "Inclosed find my check for $500 to apply on commission. When I get the balance due from Wakefield I will for'd balance. You will have to wait for balance same as I will have to." Under date of November 28, 1923, the defendant wrote the plaintiff as follows: "Find my check inclosed for $300 to apply on commission on Wakefield lands in 42–35." These checks were cashed in due course of business. Subsequently the remainder of the commission was paid to the defendant, but the defendant refused to pay the remaining $200 to plaintiff, and this suit was begun to enforce payment. On the basis of the finding of the jury that the oral contract was in fact made and the undisputed evidence in the case, on motion of the plaintiff, the plaintiff had judgment for $216.66 with interest and costs, from which judgment the defendant appeals.

The cause was submitted for the appellant on the brief of *A. M. Andrews* of Shawano, and for the respondent on that of *Winter & Winter* of Shawano.

ROSENBERRY, J. It is the contention of the defendant in this case that he is not liable on an oral contract under the

provisions of sec. 240.10, Stats.; second, because the contract between brokers to pool commissions earned from opposite sides, unknown to and without the sanction of the principals, was contrary to public policy. It is the contention of the plaintiff that sec. 240.10 does not apply to a contract between brokers but is applicable only to a contract between the owner and a broker; and second, that the promise of the defendant made after the execution of the oral contract is sufficient to take the case out of the statute. There is no evidence in the case which tends to support the second contention of the defendant that the agreement was contrary to public policy. The transaction seems to have been open and above board as to all parties. The fact that the plaintiff waived his commission of one dollar per acre from the purchaser indicates that the purchaser must have known of his interest in the commission to be paid by the seller. That contention will not be further considered.

Sec. 240.10 is as follows:

"Every contract to pay a commission to a real-estate agent or broker or to any other person for selling or buying real estate or negotiating lease therefor for a term or terms exceeding a period of three years shall be void unless such contract or some note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, or terms of rental, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller or tenant, be in writing and be subscribed by the person agreeing to pay such commission."

The Michigan statute (Act 238, Public Acts of 1913) adds the following provision to the statute of frauds: "Every agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate."

In *Smith v. Starke*, 196 Mich. 311, 162 N. W. 998, this statute was held to apply to an arrangement between brokers to divide commissions. The court said:

"Compensation to real-estate brokers is known, not only to the layman, but also to the law, as 'commission.' The

word 'commission' implies a compensation to a factor or other agent for services rendered in making a sale.  (Cases cited.)   The compensation which plaintiff was to receive under his oral agreement with defendant was commission, and therefore within the act.   Plaintiff so styles it in his testimony, and in this he is correct."

Sec. 1624 of the Civil Code of California provides:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent: . . .

"(6)  An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission."

Under this section it is held that the statute was designed for the protection of real-estate owners against the unfounded claims of brokers and was never intended to be applied to contracts between brokers co-operating in the sale of real property and agreeing to share commissions earned as a result of such sale.  *Gorham v. Heiman,* 90 Cal. 346, 27 Pac. 289.   See, also, *Aldis v. Schleicher,* 9 Cal. App. 372, 99 Pac. 526; *Hageman v. O'Brien,* 24 Cal. App. 270, 141 Pac. 33.

The state of Washington has a similar statute (Remington, Comp. Stat. 1922, § 5825, sub. 5) which provides that an agreement authorizing the employment of an agent or real-estate broker to sell or purchase real estate for compensation or commission shall be void unless in writing.   This statute has been held not to apply to an agreement between brokers to divide commissions, but held to be applicable only to agreements made between owners and agents.  *Armstrong v. Webber,* 92 Wash. 295, 158 Pac. 957; *Jones v. Kehoe,* 61 Wash. 422, 112 Pac. 497.

Statutes in states such as Indiana that employ the term "owner" are not helpful in the construction of our statute, where that word is omitted.   An agreement by which real-estate brokers are to unite their efforts in making a sale, and

in the event of its conclusion to divide the commission to be paid by the owner, may be regarded as something in the nature of a joint adventure. What is really contracted for is not the payment of a commission but a division of the fruits of their joint efforts which come to them from the owner in the shape of a commission. It is manifest from the language of the statute that it was not intended to apply to a contract between brokers. The price for which the real estate is to be sold, the commission to be paid, and the period during which the agent or broker shall procure a buyer, are terms not applicable to an agreement between brokers to distribute a sum earned by the parties under a contract with the owner.

*By the Court.*—Judgment affirmed.