Argued March 16, affirmed April 20, 1955

# SORENSON *v.* BRICE REALTY COMPANY
## 282 P. 2d 1057

*Alfred A. Hampson, Jr.,* of Portland, argued the cause for appellant.

*George C. Reinmiller,* of Portland, argued the cause for respondent.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

TOOZE, J.

This is an action by plaintiff, Orval W. Sorenson, to recover certain monies alleged to be due him from

defendant, Brice Realty Company, a corporation, as commissions on the sale of real estate. The jury returned a verdict in plaintiff's favor in the sum of $5,139.50, and judgment was entered accordingly. Defendant appeals.

Defendant Brice Realty Company is an Oregon corporation, with its principal office and place of business located in Portland, Oregon. It is a duly licensed real estate broker under the laws of this state. George Brice, Jr., is the president, general manager, and principal stockholder of the corporation.

In January 1951, plaintiff was in business for himself with a real estate office located at 2180 West Burnside street, in Portland. He was a duly licensed real estate broker, specializing in sales of rental income properties.

Late in 1950 defendant Brice Realty Company decided to open a new income-property department as a part of its real estate business, and sought the services of plaintiff to head and manage that department.

After extended preliminary negotiations between plaintiff and representatives of defendant, an oral agreement was entered into between plaintiff, acting on his own behalf, and George Brice, Jr., acting for the defendant corporation, in substance as follows: Plaintiff agreed to head the new income-property department of defendant and to manage its business; he also agreed to turn over to defendant the insurance business which he had; for his services, plaintiff was to be paid 50 per cent of all real estate commissions received on all sales made by himself personally, and an additional 7½ per cent of all real estate commissions received on sales made by any other salesman in his department, the commissions to be based on Portland Realty Board rates; he was also to receive

10 per cent of the net commissions received by the defendant on the insurance account. On the same day, it was also agreed between the parties that if property owned by any individual in the defendant organization was listed and sold through the efforts of salesmen for the corporation, the individual owner should pay on account thereof the regular commission according to Portland Realty Board rates.

Pursuant to this agreement, plaintiff surrendered his broker's license, procured a real estate salesman's license, and went to work for the defendant corporation on February 1, 1951, as the head of its new income-property department. On the suggestion of John D. Stewart, vice-president and sales manager of defendant corporation, and with the express approval of George Brice, Jr., one Bert Inman, formerly sales manager of defendant but at the time a salesman for defendant, became a member of plaintiff's department.

At the time the above agreement was entered into between plaintiff and defendant, George Brice, Jr., as an individual, together with his mother and another corporation, of which Brice, Jr., was the president, were the owners of two income-producing apartment-house properties, to-wit: Crescent Orchards and View Villa, located at 61st avenue and East Burnside street in Portland, Oregon. These two properties had been listed for sale by the owners thereof with the Brice Realty Company.

Immediately after plaintiff and George Brice, Jr., had reached the agreement above set forth, George Brice, Jr., speaking for the defendant corporation in his capacity as president and general manager thereof, charged plaintiff, as head of the new income-property department, with the responsibility of selling the two apartment-house properties so listed for sale with the defendant corporation. Plaintiff testified to a part of

the discussion he had with Brice, Jr., respecting the sale of the apartment houses as follows:

"Q What if anything did you reply in answer to his statement regarding those two properties?

"A Well, being as it was property owned by my broker and that he was one of the principals in the thing, I asked him where we would light brokerage wise on this particular property, and he said, 'I will pay you a full commission.' I says, 'What do you mean by that?' He says 'Portland Realty Board rates.' He said 'I have offered it for sale through other brokers,' namely he mentioned Payne & Faust, the organization down the street from there. That he was agreeable to paying full commission if a satisfactory transaction was evolved."

Defendant objected to this and other similar and related testimony on the ground that it was an attempt to prove an oral contract for the sale of real estate under the control of the owner in violation of the Statute of Frauds: § 2-909, OCLA (ORS 41.580).

Section 2-909, OCLA (ORS 41.580), so far as material to this case, provides:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law:

"* * * * * *

"(8) An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for a compensation or commission; provided, however, that if the note or memorandum of such agreement be in writing and subscribed by the party to be charged, or by his lawfully authorized

agent, and contains a description of the property sufficient for identification, and authorizes or employs the agent or broker named therein to sell such property, and expresses with reasonable certainty the amount of the commission or compensation to be paid such agent or broker, such agreement of authorization or employment shall not be void for failure to state a consideration.''

Defendant's objection presents one of the issues for decision on this appeal. It is plaintiff's contention that all his dealings with George Brice, Jr., respecting the sale of the apartment houses and the real estate commissions to be paid on account thereof were carried on by him as a salesman for defendant corporation, and by Brice, Jr., as president and general manager of the corporation, and not in his individual capacity as one of the owners of the properties in question. On the other hand, it is defendant's contention that plaintiff's oral agreement with Brice, Jr., respecting the commissions to be paid by Brice, Jr., and his associates, upon the sale of the properties, was one made with the owners as such. It is manifest that if defendant's version of the transaction is true, the agreement would be in violation of the Statute of Frauds, supra, and void.

■ However, there is an abundance of satisfactory evidence in the record to support plaintiff's theory, consisting not only of his own testimony, but also the testimony of corroborating witnesses. George Brice, Jr,. was not called as a witness on the trial of the case. Based upon the evidence introduced on the trial, the relationship of plaintiff to the sale of the properties and the commissions to which he was entitled were properly submitted as questions of fact for the jury to determine. The verdict of the jury resolved those issues in favor of plaintiff.

Moreover, one of the most important factors in establishing plaintiff's claim is defendant's answer, wherein it is alleged:

"That during the periods of time hereinafter referred to there were listed for sale with the defendant as broker by the owners thereof, under what is termed in real estate circles as 'open listings' the Crescent Orchard Apartments and the View Villa Apartments; that each and every salesman, including the sales manager, employed by defendant had an equal right with any other salesman employed by defendant to negotiate a sale of said apartments."

Thus, from defendant's own answer it appears that the properties were being sold through the corporation, as broker, and plaintiff was a salesman for the corporation.

■ It would seem axiomatic that the provisions of the Statute of Frauds quoted above do not apply to an oral agreement whereby a licensed real estate broker employs a licensed real estate salesman or broker as his subagent to sell or purchase real estate listed with the broker for compensation or a commission. The record in this case is almost conclusive upon the proposition that plaintiff was employed by the defendant broker to sell these apartment-house properties as a licensed salesman, working under the direction of the broker and for the benefit of the broker.

Section 59-102, OCLA, as amended by ch 286, Oregon Laws 1941 (ORS 696.010), provides in part as follows:

"For the interpretation of this act, unless the context indicates a different meaning:

"(1) The term 'real estate broker' shall mean and include any person who, for another and for compensation or with the intention or in the ex-

pectation or upon the promise of receiving or collecting compensation:

"(a) Sells, exchanges, purchases, rents or leases real estate;

"(b) Offers to sell, exchange, purchase, rent or lease real estate;

"(c) Negotiates, or offers or attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate;

"(d) Lists or offers or attempts or agrees to list real estate for sale;

"* * * * * *

"(i) Advertises or holds himself out as being engaged in the business of buying, selling, exchanging, renting or leasing real estate;

"(j) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate;

"(k) Assists or directs in the negotiation or closing of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate.

"* * * * * *

"(4) The term 'real estate salesman' shall mean and include any person, who, for compensation or in the expectation or upon the promise thereof, is employed or engaged by or becomes associated with a licensed real estate broker to do any act or acts or deals in any transaction or transactions set out in subsection 1 of this section for or on behalf of such licensed real estate broker."

Section 59-501, OCLA, as amended by ch 429, Oregon Laws 1947 (ORS 696.290), provides:

"It shall be unlawful for any licensed broker or salesman to offer, promise, allow, give, pay or rebate, directly or indirectly, any part or share of his commission or compensation arising or accruing from any real estate transaction to any person who is not a licensed broker or salesman. *No real estate salesman shall be employed by, or accept compensa-*

*tion from, any person other than the broker under whom he is licensed at the time, and it shall be unlawful for any licensed real estate salesman to pay a commission to any person except through the broker under whom he is at the time licensed.''* (Italics ours.)

Excepted from the provisions of the foregoing statutes are persons, partnerships, associations or corporations, who as owners or lessors shall perform any of the acts aforesaid with reference to property ''owned or leased by them, or to the regular employes thereof, with respect to the property owned or leased, where such acts are performed in the regular course of or as an incident to the management of such property and the investment therein.'' § 59-104, OCLA (ORS 696.030).

These apartment-house properties were not owned by the defendant corporation as provided in § 59-104, OCLA, supra, nor did defendant corporation bear toward them any relation that would make that statute applicable in this case.

■ Under the above statutes, plaintiff, as a real estate salesman employed by the defendant broker, was specifically prohibited from dealing directly with or for the owners of the properties in question. He could deal only through and for the broker by whom he was employed.

■ There is no statute of this state that prohibits an oral agreement as to the division of real estate commissions between broker and broker, or broker and salesman. Such agreements are enforcible. *Bush v. Mattingly,* 62 Ariz 483, 158 P2d 665; *Thompson v. Carey's Real Estate,* 335 Mich 474, 56 NW2d 255; *Borisoff v. Schatten,* 335 Mich 684, 57 NW2d 430; *Connerton v. Andrews,* 195 Wis 433, 218 NW 817; *Niemann v. Severson,* 246 Wis 636, 18 NW2d 338. The case of *Sher-*

*man v. Clear View Orchard Co.*, 74 Or 240, 145 P 264, cited by defendant is not in point. There, the oral agreement was between a salesman and the owners of the property. No broker was involved. The salesman agreed to create a selling force and manage it for the company, and it was this force which was to do the selling. The court said that the stipulation in the contract that he was to receive a 5 per cent commission on sales made by himself seemed merely incidental to the principal contract, and then stated: "and while as to it he might be barred by the statute of frauds, yet, as no sale was made by him, that question does not arise here."

We quote another significant paragraph of defendant's affirmative answer in this case:

"II

"That plaintiff during the times herein mentioned was employed by defendant as salesman under an employment contract wherein and whereby it was agreed that defendant would remunerate the plaintiff to the extent of fifty per cent of the *total commission received* by defendant for any sale of real estate made by plaintiff." (Italics ours.)

It is defendant's contention in this case that plaintiff's compensation was to be based upon the actual amount of commission received by defendant, rather than upon the basis of commissions according to Portland Realty Board rates, as claimed by plaintiff.

■ These contentions presented an issue of fact for determination by the jury. There was substantial evidence to support plaintiff's claim, and the verdict of the jury in his favor is final and conclusive upon that question.

■ Although defendant claims in its affirmative defense that plaintiff and his assistant Inman did not

effect the sale of the two apartment-house properties, its evidence failed to establish that fact. On the contrary, there is substantial evidence to establish the fact that it was through the efforts of plaintiff and Inman that a final deal for the conveyance of the two apartment houses was consummated. The final transaction, which involved cash and trade considerations, was based upon a sales price of $380,000 for the apartment houses. The parties agree as to this price.

Upon the completion of the transaction, George Brice, Jr., arbitrarily fixed the sum of $2,500 as the total commission to be paid the defendant Realty Company on account of the sale, and as an officer of the defendant corporation, credited plaintiff's account with the sum of $625, or one fourth of the commission, and Bert Inman's account with one fourth, or $625; the balance, or $1,250, presumably being retained by the defendant corporation. He also credited plaintiff's account with the sum of $187.50, being the 7½ per cent override agreed upon. The credits were given upon the theory that the salesmen were entitled to their percentages of the commission actually received by defendant corporation, rather than a commission based upon the Portland Realty Board rates.

Based upon Portland Realty Board rates, it is agreed between the parties that the total commission due defendant corporation would be $12,000. Of this, plaintiff would be entitled to 25 per cent, or $3,000, plus the sum of $900 as a 7½ per cent override as manager. In addition, it was agreed between the parties that defendant owed plaintiff the further sum of $1,052 as commissions upon the sale of Wildwood Apartments, a transaction not disputed in the instant controversy, although recovery therefor is sought by plaintiff.

The verdict returned by the jury was in the exact amount claimed by plaintiff. The verdict is supported by substantial evidence. There is no prejudicial error in the record.

The judgment is affirmed.