Chief Judge Fuld.
The question posed by this appeal is whether the Statute of Frauds requires an agreement between two finders—to share in the commission which one of them had received from a third party principal—to be in writing. The courts below answered the question in the affirmative. We reach a contrary conclusion.
*348 In August, 1965, Lehman Brothers, which owned substantially all of the stock of Drew Chemical Corporation, enlisted the plaintiff’s services to find a purchaser for Drew upon an oral promise of á finder’s fee. The plaintiff later revealed this proposal to representatives of defendant corporation in confidence, offering the defendant the opportunity to ‘‘work as a finder on a participating basis ”. The defendant’s officials having agreed, the plaintiff, in their presence, called a representative of Lehman and advised him that he "could work with defendant as my agent”. When a purchaser, the “Slick” corporation, was found through the efforts of the defendant, the latter, pursuant to a written agreement with Slick, received a stipulated consideration for its services in negotiating the purchase.
The plaintiff thereupon brought the present suit to share in the defendant’s commission and, following joinder of issue, the defendant moved for summary judgment dismissing the complaint as barred by the Statute of Frauds (General Obligations Law, § 5-701, subd. 10). The court at Special Term granted the motion and a divided Appellate Division affirmed; the dissenting justices, however, concluded, in reliance upon our decision in Bradkin v. Leverton (26 N Y 2d 192), that the only contract required by the statute to be in writing is one between the finder and the principal or employer from whom the former seeks compensation.
Despite the broad wording of the statute—mandating that a ‘‘contract to pay compensation for services rendered in negotiating * * * the purchase [or] sale * * * of a * * * business ” be in writing (General Obligations Law, § 5-701, subd. 10)[1]—it is clear that it was aimed at averting the evils arising *349 from oral contracts “ between the finder and the principal or employer with whom he has assertedly contracted and from whom he seeks compensation ” and not between fellow finders or finders and other parties. (Bradkin v. Leverton, 26 N Y 2d 192, 198, supra; see, also, Cohon & Co. v. Russell, 23 N Y 2d 569, 575; Minichiello v. Royal Business Funds Corp., 18 N Y 2d 521; cf. Intercontinental Planning v. Daystrom, Inc., 24 N Y 2d 372, 378.) “ ‘ The nature of the transactions ’ ”, we wrote in the Minichiello case, quoting from the Law Revision Commission’s Report recommending the enactment of subdivision 10 of section 31 of the Personal Property Law—the predecessor of the provision now under consideration (18 N Y 2d, at p. 526) —is such that, “ ‘ in the absence of the requirement of a writing, unfounded and multiple claims for commissions [by business brokers and finders] are frequently asserted, and employers often seek to escape liability by denying the fact of employment. These controversies are commonly resolved by juries on conflicting testimony, with the consequent danger of erroneous verdicts’ (1949 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1949, No. 65(0-), p. 615]).” Accordingly, it seems obvious that the Legislature was intent in preventing the “ unfounded ” claims by brokers against employers, not claims by one broker against another.
Although the Brakdin case (26 N Y 2d 192, supra) presents a different fact pattern, its principles are apposite here. Brad-kin, who had ‘ ‘ found ’ ’ a company in need of financing pursuant to a written brokerage agreement with his corporate principal, brought suit against the defendant, one of the officers of the corporation, based on his private appropriation of the financing transaction. In upholding the plaintiff’s cause of action for a finder’s fee, despite the absence of a written agreement with the defendant, we declared (26 N Y 2d, at p. 199):
“ Quite manifestly, the purpose of the statute is to protect against fraudulent dealings between the finder and his employer, not between the finder and a third party, such as the defendant before us. Since there is no danger of ‘ unfounded and multiple claims for com *350 missions ’ where a third party is concerned, the Statute of Frauds provides no defense to him.” (Emphasis in original.)
It is equally manifest that there is no such danger in a case like the present and no need to protect one broker or finder against the unlikely and rare claim of another. Nor was such protection within the contemplation of the lawmakers; as the Law Revision Commission’s Report demonstrates, the statute was aimed at the protection of principals or employers against claims for brokers’ or finders’ fees and, indirectly, at protecting brokers and finders in their dealings with principals, not with one another.[2] Here, the plaintiff is suing not an employer or principal for a fee but a fellow finder for a portion of a fee already received by the latter, on the strength of an agreement by the two of them that they pool their efforts and share the benefits. In so doing, the plaintiff relies on a theory closely akin to that of joint venture, with its overtones of fiduciary obligation, in which situations, we note, there is no requirement that there be a writing to evidence the agreement. (See, e.g., Wainwright & Page v. Burr & McAuley, 272 N. Y. 130, 132-133; Mattikow v. Sudarsky, 248 N. Y. 404, 406; Eidelberg v. Zellermayer, 5 A D 2d 658, 663, affd. on other grounds, 6 N Y 2d 815; cf. Kaplan v. Meyer, 271 App. Div. 837; Dayvault v. Baruch Oil Corp., 211 F. 2d 335, 339.)
The conclusion at which we have arrived — that no writing is required—is supported by the great weight of authority in this country. (See, e.g., Bush v. Mattingly, 62 Ariz. 483; Gorham v. Heiman, 90 Cal. 346; Phy v. Selby, 35 Idaho 409; Beznos v. Borisoff, 339 Mich. 12; Reilly v. Maw, 146 Mont. 145; Reasoner v. Yates, 90 Neb. 757; Sorenson v. Brice Realty Co., 204 Ore. 223; Warren v. White, 143 Tex. 407; Anderson v. Johnson, 108 Utah 417; Armstrong v. Webber & Co., 92 Wash. 295; Niemann v. *351 Severson, 246 Wis. 636, following Connerton v. Andrews, 195 Wis. 433; see, also, Note, 44 ALR 2d 741; but see, contra, Cohen v. Spite Co., 121 Ohio St. 1 [interpreting a statute later repealed].) Although these cases deal with real estate brokers — in jurisdictions where the applicable statute requires a writing in broker-principal cases — rather than with business brokers, their underlying rationale supports a determination in favor of the plaintiff herein. Thus, in California, its Supreme Court upheld an oral agreement between brokers to share commissions for the sale of mining property, declaring (Gorham v. Heiman, 90 Cal. 346, 358-359, supra):
“ But, clearly, that provision [of the statute] was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to co-operate in making sales for a share of the commissions. It may be, as counsel argue, that the allowance of such claims as plaintiffs and intervenors make in this action, unsupported, as they are, by any written evidence of the contract, opens the door to frauds of as gross a nature as were ever perpetrated by real estate brokers under pretense of oral employment by the owners to make sales; but if so, the evil is one which the legislature alone can remedy. It might be as plausibly argued that contracts should generally be held void if not in writing; but the law is otherwise.”
And, in Connerton v. Andrews (195 Wis. 433, supra), in which the plaintiff was granted recovery under an oral agreement between brokers “ to pool commissions earned from opposite sides,” the high court of Wisconsin wrote (pp. 436-437):
‘ ‘ Statutes * * * that employ the term ‘ owner ’ are not helpful in the construction of our statute, where that word is omitted. An agreement by which real-estate brokers are to unite their efforts in making a sale, and in the event of its conclusion to divide the commission to be paid by the owner, may be regarded as something in the nature of a joint adventure. What is • really contracted for is not the payment of a commission *352 but a division of the fruits of their joint efforts which come to them from the owner in the shape of a commission. * * * The price for which the real estate is to he sold, the commission to be paid, and the period during which the agent or broker shall procure a buyer, are terms not applicable to an agreement between brokers to distribute a sum earned by the parties under a contract with the owner.” (Emphasis supplied.)
It follows, therefore, that the plaintiff is entitled to a trial, to prove, if he can, that he and the defendant orally agreed to divide the finder’s fee when one was received.
The order appealed from should be reversed, with costs in all courts, and the defendant’s motion for summary judgment denied.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, with costs in all courts, and case remitted to Special Term for further proceedings in accordance with the opinion herein.

. Insofar as relevant, subdivision 10 of section 5-701 renders void, if not in writing, “a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. ‘ Negotiating ’ includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.”

. A further indication of legislative design may be found in the 1949 Law Revision Commission Report to which we have referred. Thus, in discussing the contents of the writing required by the statute, the Report speaks solely in “ broker-principal ” terms: “ in the absence of a memorandum * * * signed by the party to be charged, the broker may in lieu thereof notify the principal by registered mail * * * in which ease the terms of the transaction must be set forth ” (1949 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1949, No. 65(G)], p. 616).