ADAM HOLENDER, Appellant, v FRED CAMMANN PRODUCTIONS, INC., et al., Respondents.

First Department, December 18, 1980

#### APPEARANCES OF COUNSEL

*Robert F. Moraco* of counsel *(Ira M. Belfer* with him on the brief; *Belfer & Bogart,* attorneys), for appellant.

*Paul R. Marrone* of counsel *(Curtis, Mallet-Prevost, Colt & Mosle,* attorneys), for respondents.

#### OPINION OF THE COURT

LUPIANO, J.

Plaintiff in his complaint alleges an agreement entered into by plaintiff and the defendants in November, 1977, whereby defendants agreed to pay plaintiff upon completion of a certain motion picture, 25% of the "markup" or gross profits payable for production services to be supplied by defendants in the making of such film, which agreement was

thereafter amended to reduce the compensation payable to plaintiff to 12½% and that, the picture having been completed, the defendants refused to pay this compensation, although due and duly demanded. In their answer, defendants admit the agreement and its modification, but contend that such agreement as modified provided for compensation payable to plaintiff only "as and when actually paid" by the producer of the film to EUE/Screen Gems, a division of Columbia Pictures Industries, Inc. As a first affirmative defense, defendants assert that the agreement alleged by plaintiff in his complaint is barred by the Statute of Frauds "except to the extent any such agreement is hereinbefore admitted to exist on the part of Production", the corporate defendant.

Issue having been joined, defendants move for summary judgment pursuant to CPLR 3212 on the ground that the oral agreement which plaintiff asserts in his complaint is unenforceable by virtue of the Statute of Frauds. The parties entered into a stipulation "ADMITTING FACTS NOT IN DISPUTE AND LIMITING ISSUES IN DISPUTE" dated October 19, 1979. In that stipulation defendants again admitted that plaintiff, a cinematographer, film director and commercial television producer, in October, 1977, informed them that he might be retained as cinematographer for a motion picture tentatively entitled "California" to be produced by one Brooks. It was admitted that plaintiff offered to introduce the corporate defendant to the producer, who was in need of production services in connection with the picture, and that as a result, the corporate defendant through its president, the individual defendant, entered into an oral agreement with plaintiff predicated upon Brooks' subsequent engagement of the corporate defendant to provide certain production services. It was admitted that the corporate defendant, being unable to undertake the task of rendering all the production services required by the producer, introduced the producer to another party who performed production services, to wit, EUE, and that EUE and the producer entered into an agreement for the rendition by EUE of production services. It was further admitted that EUE and the corporate defendant agreed that in return for said defendant's referral of the producer Brooks to EUE and for said de-

fendant's performance of certain limited production services in connection with the film, the "markup" would be divided as follows: 12½% to plaintiff and the balance between EUE and the corporate defendant equally.

On this record Special Term granted summary judgment to the individual defendant, dismissing the complaint as to him, on the ground that there was no showing that he entered into the agreement with plaintiff in his individual capacity apart from his capacity as president of the corporate defendant. We agree with Special Term's determination in this regard. However, Special Term also granted the corporate defendant summary judgment dismissing the complaint on the ground that the alleged oral agreement sued upon by plaintiff involved a contract to pay for services rendered to a principal as a finder or business broker in negotiating a business opportunity and hence was violative of the Statute of Frauds and unenforceable. This result fails to perceive that the defendants have at all times, both in pleading and in entering into the stipulation, admitted the oral agreement and that the only real dispute between the parties is when the 12½% compensation is payable to plaintiff—plaintiff contending that the defendants who were purportedly holding $20,000 of EUE's money guaranteed payment to plaintiff on completion of the picture, and defendants contending that the compensation due plaintiff was payable or contingent upon payment by EUE to the corporate defendant of the portions of the "markup" due the corporate defendant and plaintiff.

As the defendants by their answer admitted, an oral agreement with subsequent modification entered into by the corporate defendant with plaintiff, and as they have set up the Statute of Frauds as a defense *only* as to those aspects of the agreement relied upon by plaintiff, not admitted to by defendants, it is clear that the Statute of Frauds has been waived (see 56 NY Jur, Statute of Frauds, § 358). This conclusion is buttressed by the admissions of fact and contentions advanced by defendants in the stipulation alluded to above. The evidentiary aspect of such stipulation, viewed in the context of the pleadings, does not permit of the award of summary judgment to the corporate defendant dismissing the complaint under the Statute of Frauds. It is clear

in New York that "an oral contract falling within the prohibition of the statute is merely * * * voidable rather than absolutely void. Thus, the statute of frauds is viewed as only a rule of evidence, that is, the statute affects the proof of the agreement and does not render it absolutely void or illegal, but only voidable, at the election of the party to be charged" (56 NY Jur, Statute of Frauds, § 318).

Of course, the above analysis presumes that the oral agreement relied on by plaintiff is one within the ambit of the Statute of Frauds. However, apart from such analysis, there is another basis warranting denial of summary judgment relief on this record. The oral agreement relied on by plaintiff is not particularized in the complaint, the particulars being supplied by way of answer and the afore-mentioned stipulation. Thus, the interpretation, the construction of the oral agreement, becomes critical. Plaintiff, in his affidavit in opposition to defendants' motion for summary judgment, advances the view that the oral agreement, as modified, entered into by him with defendants, constituted an agreement between cofinders not subject to the Statute of Frauds. He points out that "(t)he defendants do not deny the making of the agreement or the modification of the agreement. They do not even deny that the amount due is $27,781.25. The defendants only deny that the money is due to plaintiff at present."

In response, defendants submit a reply affidavit by counsel (not, in this context a party, with knowledge of the facts) who simply asserts that defendants have not admitted that the parties entered into a cofinder agreement. This is not sufficient to warrant a conclusion as a matter of law that the agreement sued upon is within the Statute of Frauds. Credibility is lent to the plaintiff's characterization of the oral agreement as one between cofinders for purposes of disposing of the defendants' summary judgment motion by virtue of the defendants' admission that plaintiff was entitled to share in the "markup" obtained by EUE to the extent of $12\frac{1}{2}\%$. If the relation between the parties is such that they did not enter into a cofinder relationship, then there would simply be no reason other than unalloyed beneficence and a charitable sense for the corporate defendant to

obtain a "slice of the pie" for plaintiff. Businessmen simply do not act this way, as a general rule.

As it is arguable on this record that the parties orally agreed to a cofinder relationship, and as such an agreement is not within the purview of the Statute of Frauds, it follows that plaintiff's complaint should not have been dismissed as against the corporate defendant (see *Dura v Walker, Hart & Co.*, 27 NY2d 346).

In conclusion, the following oft-cited propositions are recollected: that on a motion for summary judgment "[i]ssue-finding, rather than issue-determination, is the key to the procedure" *(Esteve v Abad*, 271 App Div 725, 727) and that as the granting of a summary judgment motion is the procedural equivalent of a trial, such drastic relief should not be granted where there is any doubt as to the existence of a triable issue (see *Crowley's Milk Co. v Klein*, 24 AD2d 920; *Moskowitz v Garlock*, 23 AD2d 943).

The order, Supreme Court, New York County (TIERNEY, J.), entered April 14, 1980, and judgment of said court, entered April 17, 1980, pursuant to said order which granted defendants' motion for summary judgment dismissing the complaint, should be modified, on the law, to the extent of reversing the grant of summary judgment dismissing the complaint to defendant Fred Cammann Productions, Inc. and denying the corporate defendant's motion for summary judgment, and, as so modified, should be affirmed, without costs and disbursements.

FEIN, J. (concurring). The original oral agreement between the plaintiff and the corporate defendant (Productions) provided that if plaintiff arranged a meeting between Brooks (Brooks), the producer of a motion picture, and Productions, and Brooks engaged Productions to provide production services in connection with the making of the motion picture, Productions would pay plaintiff 25% of the "markup", the profit over and above the cost and expense of rendering production services after reimbursing such costs and expenses. The sole function of plaintiff was the introduction of Productions to Brooks, the classic role of a finder.

This constituted an oral agreement to pay a "finder's fee" for a "business opportunity" within the purview of the Statute of Frauds *(Freedman v Chemical Constr. Corp.,* 43 NY2d 260, 266-267), unenforceable by virtue of section 5-701 (subd a, par 10) of the General Obligations Law. As a contract to pay for services rendered as a finder or business broker in negotiating a business opportunity, it was unenforceable in the face of the Statute of Frauds pleaded in bar by Productions. Moreover, it was never performed. Although plaintiff introduced Productions to Brooks, it is undisputed that Brooks did not engage the services of Productions because Productions would have been unable to perform the services required by Brooks. However, Productions referred Brooks to EUE/Screen Gems, a division of Columbia Pictures.

Brooks subsequently entered into a contract with EUE for the required production services. Productions claims that Brooks agreed to pay EUE a markup of 35%; that EUE agreed with Productions that in return for Productions' referral of Brooks to EUE and Productions' rendition of certain limited production services in connection with the making of the film, "the aforesaid markup as and when actually paid by Brooks to, and received by EUE would be divided", $12\frac{1}{2}$% to plaintiff and the remaining $87\frac{1}{2}$% equally between EUE and Productions.

Plaintiff asserts that the original agreement between him and Productions was then modified to reduce his share of the markup to $12\frac{1}{2}$%. Defendants agree with this position but claim that the $12\frac{1}{2}$% was to be due and payable to plaintiff only after the markup was actually paid by Brooks to EUE and after EUE forwarded the appropriate share of the markup to Productions for both its own account and the account of plaintiff.

It is undisputed that the motion picture has been completed, but no part of the markup has been paid by Brooks to EUE and no part of the markup has been paid by EUE to Productions, either for its own account or for the account of plaintiff despite due demand.

It is plaintiff's position that by admitting there was a modification of the original agreement, Productions has waived the defense of the Statute of Frauds. My brethren

spell out a waiver from the concession that there was a modification, in Productions' answer and in the "STIPULATION ADMITTING FACTS NOT IN DISPUTE AND LIMITING ISSUES IN DISPUTE". However, such waiver cannot be broader than its terms. The Statute of Frauds is a waivable defense and does not make the contract sued upon unenforceable unless the statute is pleaded. Paragraph "5" of the answer pleads the statute except to the extent of the terms of the modification admitted by the answer. Paragraph "2(f)" of the answer and paragraph "24" of the stipulation assert that the obligation to pay plaintiff was premised upon payment by Brooks to EUE and by EUE to Productions. It is undisputed that no payments have been made by EUE to Productions. Since the modification was premised upon such payment, there is no waiver. The fact that this is pointed out by defendant's attorney rather than by an officer of defendant, is not dispositive. The attorney's affidavit merely points to the language of the answer and the stipulation, and argues a conclusion from such language. The fact that plaintiff contends that the agreement was otherwise cannot be substituted for or added to the defendant's waiver.

The majority concludes that the admissions demonstrate that plaintiff and Productions were cofinders and that the statute is not applicable, relying upon *Dura v Walker, Hart & Co.* (27 NY2d 346). However, in that case the court found (p 348) that there was an agreement between the plaintiff and representatives of defendant that defendant would "work as a finder on a participating basis". There, plaintiff, in the presence of defendant's officials, called a representative of Lehman Brothers who had originally enlisted plaintiff's services to find a purchaser for a chemical corporation upon an oral promise of a finder's fee. Plaintiff advised the Lehman Brothers' representative that he "could work with defendant as my agent". Thereafter a purchaser was found through defendant's efforts. Defendant received from the purchaser a stipulated consideration for its services in negotiating the purchase. The complaint seeking a portion of the consideration was sustained against a motion to dismiss on the basis of the Statute of Frauds upon the ground that the parties agreed to work together and that by that agreement they became coventurers as finders.

We search the record in our case in vain to find any assertion by the plaintiff that any such agreement to work together in obtaining the services of EUE for Brooks was made with the defendant. My brethren assert that there must have been such an arrangement because otherwise "there would simply be no reason other than unalloyed beneficence and a charitable sense for the corporate defendant to obtain a 'slice of the pie' for plaintiff. Businessmen simply do not act this way, as a general rule." However, this view of the way businessmen act does not demonstrate there was an agreement in the absence of even an assertion that such an agreement existed.

There is simply nothing in this record to support the conclusion that plaintiff and Productions were cofinders. On this basis Special Term's order dismissing the complaint upon the ground of the Statute of Frauds would appear to be correct.

However, there is some intimation in plaintiff's affidavit in opposition that plaintiff rendered services as a cinematographer and some production services, and that this was the subject of the modified agreement. If this is so, the statute is not applicable and the plaintiff may be entitled to recover for such services. Although the sparse complaint does not so allege, it is broad enough to allow proof that this was the agreement and that such services were rendered.

Accordingly, I concur in the result.

KUPFERMAN, J. P., and CARRO, J., concur with LUPIANO, J.; BIRNS, J., concurs in a separate opinion by FEIN, J.

Order and judgment, Supreme Court, New York County, entered on April 14, 1980 and April 17, 1980, respectively, modified, on the law, to the extent of reversing the grant of summary judgment dismissing the complaint to defendant Fred Cammann Productions, Inc. and denying the corporate defendant's motion for summary judgment, and, as so modified, affirmed, without costs and without disbursements.