**SUSSEX LEASING CORP.,**
**Plaintiff–Appellant,**

v.

**US WEST FINANCIAL SERVICES,**
**INC., Defendant–Appellee.**

**No. 1028, Docket 89–7052.**

United States Court of Appeals,
Second Circuit.

Argued April 19, 1989.

Decided June 8, 1989.

John M. Brickman, Great Neck, N.Y. (Peirez, Ackerman & Levine, Great Neck, N.Y., I. Andrew Goldberg, of counsel), for plaintiff-appellant.

Joel M. Miller, New York City (Miller & Wrubel P.C., New York City, Charles R. Jacob III, Maria I. Chiclana, of counsel), for defendant-appellee.

---

Before LUMBARD, ALTIMARI, and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

Sussex Leasing Co. appeals from a summary judgment of the Eastern District of New York, Mishler, J., in favor of US West Financial Services, Inc., in an action brought by Sussex against US West for breach of an oral agreement to purchase Sussex's position in a loan Sussex had arranged to make to Med–Vue Limited Partnership, a user of high technology medical equipment. The district court agreed with US West that the alleged agreement was for services to be performed as a "finder" in negotiating the loan and consequently dismissed Sussex's action as barred by the New York Statute of Frauds, which renders void any oral agreement to pay compensation for services rendered in negotiating a loan. Sussex contends that it was a principal rather than a finder for US West, having made an independent and binding agreement with Med–Vue to make the loan; US West maintains that Sussex was only a finder who facilitated the planning of the transaction between US West and Med–Vue and that the alleged agreement therefore falls squarely within the Statute of Frauds. We find on the record before us that there are unresolved disputed issues of fact which are material to a determination of whether Sussex's claim is barred by the Statute of Frauds. Accordingly, we reverse and remand for further proceedings.

I.

Sussex, a New York corporation, is in the business of leasing and financing the purchase of commercial equipment. US West, incorporated in Colorado, describes itself as a diversified financial company which, among other things, provides financing for the purchase of various types of equipment. Med–Vue, L.P. is a limited partnership consisting of doctors located in Rockland County, New York who were seeking financing for a purchase of radiological equipment. Med–Vue is not a party to this action. Jurisdiction is predicated on diversity of citizenship. The parties assume that New York law governs; the record confirms this.

Sussex and Med–Vue signed a financing agreement on July 25, 1986, in which Sussex agreed to lend Med–Vue $3,116,812 to acquire certain radiological equipment from Picker International, Inc. and several other vendors. The financing agreement stated the principal amount, set a repayment period of sixty months at thirteen percent interest per year, with the repayment period to begin four months after the closing, or "takedown," and set forth the terms of certain guarantees to ensure Sussex of payment. The agreement also provided that Med–Vue would deliver to Sussex a letter of credit in the amount of $15,000, which would be cancelled upon successful takedown. Sussex asserts that it obtained the letter of credit as liquidated damages from Med–Vue in the event that Med–Vue failed to complete the transaction.

Sussex claims that it undertook a financial and credit review of Med–Vue prior to signing the financing agreement. Harvey Granat, Sussex's president, stated in his affidavit that Sussex studied the personal financial records, including the curricula vitae, personal financial statements, federal tax returns and bank references of Med–Vue's general partners and of the shareholders of Med–Vue's managing corporation, Mid–Rockland Imaging Associates, P.C., and that corporation's predecessor, Rockland Radiological Group, P.C. Sussex then approached various lenders in order to sell its position in the Med–Vue loan. In what Granat termed a "typical financing plan," Sussex agreed to pay the manufacturers and vendors upon delivery of the equipment and Med–Vue agreed to repay Sussex under the terms of the financing agreement.

Sussex then sought an independent lender to obtain a commitment to finance the equipment purchase at an interest rate below that at which Sussex had agreed to make the loan to Med–Vue. Sussex avers that it intended to sell its position in the Med–Vue loan by creating a new loan between the independent lender and Med–Vue

and then having the independent lender purchase Sussex's security interest. Sussex would realize as profit the difference between the cost of the equipment and the sum which US West had agreed to loan to Med–Vue. US West agreed, according to Sussex, to serve as the lender and to fund the purchase of the equipment, thereby purchasing Sussex's position, fulfilling Sussex's obligation to Med–Vue and providing the financing that Sussex had agreed to advance.

The alleged agreement was not in writing, but Sussex contends that the correspondence surrounding the negotiations between itself and US West should be construed as an agreement that US West would fund the equipment purchase under the financing agreement between Sussex and Med–Vue. Sussex claims that the correspondence evidences that the deal was to be structured so that Med–Vue would give Sussex a security interest in the equipment and would execute a promissory note in favor of US West for the loan proceeds, and that Sussex would then assign the security agreement to US West, all before the takedown.

Sussex further alleges that it was obligated to purchase the equipment. It points to an executed Form UCC–1 Financing Statement which Sussex filed naming itself as the secured party. It also points to the agreement under which Sussex's security interest was to be assigned to US West. In that agreement, Sussex represented and warranted to US West that Sussex would fulfil all obligations under its security agreement with Med–Vue, that Sussex had title to that security agreement and that that security agreement was a valid obligation of Sussex.

The transaction was never completed. US West advanced $287,680, the first installment of the takedown, to Med–Vue on April 3, 1987, but US West went no further. Sussex therefore claims that US West breached its agreement to buy Sussex's position in the Med–Vue loan. Sussex filed its complaint on August 10, 1988, alleging that US West's breach had damaged it in the amount of $175,000. US West promptly moved to dismiss for failure to state a claim and for summary judgment.

Judge Mishler, in his memorandum and order dated December 12, 1988, first found that a contract was sufficiently alleged in an amended complaint which accompanied Sussex's papers opposing summary judgment. He then found that no contract was spelled out in the correspondence about the proposed transaction and that the New York Statute of Frauds, N.Y.Gen.Obl.Law § 5–701(a)(10), therefore would be applicable and would bar Sussex's claim if Sussex was a finder rather than a principal in the transaction. The court then determined that Sussex was a finder because the transaction was not, contrary to Sussex's assertion, a joint venture. The court reached that conclusion by finding that Sussex failed to establish an essential element of a joint venture, the sharing of profits and losses. Sussex was to receive only the agreed-to sum of the difference between the purchase price of the equipment and the proceeds of the US West loan, and would share neither in future profits nor in the risks that would have been associated with the loan to Med–Vue. Accordingly, Judge Mishler granted summary judgment for US West.

## II.

We do not believe that the evidence before the court, resolving ambiguities and drawing reasonable inferences against US West, compels, as a matter of law, the conclusion that Sussex was a finder rather than a principal. *See Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The case turns on the disputed factual issue of Sussex's role in the transaction. This crucial issue of disputed fact may not be resolved on a motion for summary judgment if the nonmoving party has established a basis for a jury to find in its favor on the issue. *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

We agree with the district court that no written contract existed pursuant to which US West agreed to purchase Sussex's position in the Med–Vue loan. Sussex attempts to demonstrate the existence of a writing in the exhibits annexed to the Granat affidavit, but these papers serve only to document that Sussex was involved in the negotiation of the loan and that it planned to have US West take an assignment of all its interest in the financing agreement originally produced between Sussex and US West. We find no evidence of a writing evidencing a contract for compensation to be paid to Sussex by US West.

However, our review of the record indicates that "a reasonable jury could return a verdict for [Sussex]" on the Statute of Frauds issue. *Anderson, supra,* at 248, 106 S.Ct. at 2510. Sussex may have been a principal rather than a finder for the purposes of the Statute.

New York Gen.Obl.Law § 5–701(a) provides that any "agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing," if that agreement "[i]s a contract to pay compensation for services rendered in negotiating a loan,.... 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction...." The provision is designed to "avert[ ] the evils arising from oral contracts 'between the finder and the principal or employer with whom he has assertedly contracted and from whom he seeks compensation....'" *Dura v. Walker, Hart & Co.,* 27 N.Y.2d 346, 348–49, 267 N.E.2d 83, 84, 318 N.Y.S.2d 289, 290 (1971) (quoting *Bradkin v. Leverton,* 26 N.Y.2d 192, 198, 257 N.E.2d 643, 646, 309 N.Y.S.2d 192, 197 (1970)).

This section is applicable to a situation in which there is a genuine brokerage, in which "the broker or finder claims no interest in the completed transaction," *Yonofsky v. Wernick,* 362 F.Supp. 1005, 1029 (S.D.N.Y.1973), rather than retaining a stake or selling a *bona fide* interest. *See id.* "A broker assumes no obligation and runs no risks." *Empire Rayon Yarn Co. v. American Viscose Corp.,* 354 F.2d 182, 186 (2d Cir.1965), *different results reached on other grounds on rehearing,* 364 F.2d 491 (2d Cir.1966) (*en banc*), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967).

The record contains evidence suggesting that Sussex may have assumed obligations and run risks. There are numerous references to the loan contemplated between Sussex and Med–Vue; the inference may plausibly be drawn that Sussex bargained with Med–Vue on the terms of the loan, took a security interest in the equipment and obtained assurance in the form of the letter of credit that takedown would occur near the date planned. Although the parties may have contemplated that Sussex would negotiate the loan and then assign its obligations to another party, it is insufficiently established on the record before the court that such was the intent of the parties.

We therefore conclude that Sussex has alleged sufficient evidence to support its claim that it was more than a finder. Consequently, Sussex must be afforded the opportunity to attempt to discharge its burden of proof on this issue at trial.[1] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Reversed and remanded.

---

1. Our holding makes it unnecessary to consider Sussex's alternative argument, upon which the district court made no express findings, that the proposed agreement could have been performed within one year and thus is enforceable under N.Y.Gen.Obl.Law § 5–701(a)(1).