OPINION OF THE COURT
Sheldon M. Rand, J.
The interesting issue presented by respondent’s motion to dismiss this paternity petition is whether petitioner should be permitted to challenge the results of HLA and DNA tests, which exclude respondent as the father, when the child was born with a genetic condition which she might have inherited from respondent.
FACTS
This paternity action was commenced by petitioner mother *75 on May 28, 1991, wherein she claims that respondent is the father of her daughter. The child was born on March 1, 1990. From the time of the child’s birth until shortly before this proceeding, petitioner states that respondent supported the child. Thereafter, his support ceased. On July 12, 1991, respondent denied the allegations of paternity and obligations of financial support before Hearing Examiner Francine Seiden. Respondent, petitioner, and the child were ordered to submit to blood genetic marker tests. Both human leucocyte antigen (HLA) and deoxyribonucleic acid (DNA) probe analyses were conducted.
On December 3, 1991, the parties appeared in court and were given copies of the HLA and DNA test reports. Both reports excluded respondent as being the biological father of petitioner’s child. Petitioner advised the Hearing Examiner that she sought to challenge the results of the tests. The case was then sent to an Assignment Part for trial. On April 8, 1992, the parties appeared before this court, and the case was adjourned until June 12, 1992. On June 12, petitioner was served with the instant motion to dismiss this paternity action pursuant to Family Court Act § 541[1] and CPLR 3211.[2]
*76 CONTENTIONS OF THE PARTIES
Respondent argues that dismissal is appropriate because the conclusiveness of DNA and HLA test results excluding paternity cannot be overcome by petitioner’s speculation that the test results are wrong. He claims that since both tests exclude paternity, there is simply no basis to challenge the results. While questions may exist surrounding the conclusiveness of blood test results regarding inclusiveness — that is — results which establish the probability of paternity, respondent argues that no questions exist regarding the conclusiveness of test results which exclude paternity.
Petitioner, however, alleges that objective evidence exists to support her claim that respondent is indeed the father of her child. According to an affidavit submitted by the child’s pediatrician, the child was born with an inherited condition known as polydactyly. Polydactyly is defined as the presence of more than five digits on either hand or foot. (Steadman’s Medical Dictionary [22d ed 1972].) Upon consultation with the pediatrician, petitioner claims that she was told that polydactyly is genetic, and that it is typically seen in at least one parent of a child born with the condition. When petitioner informed respondent of the child’s condition, he allegedly claimed that, he, too, was born with extra fingers and toes. According to petitioner, this information served as confirmation that the child was respondent’s. Given these circumstances, petitioner argues that to dismiss the case at this juncture, in the absence of a fact-finding hearing, would be error. She claims that such an order would preclude her from challenging the results of blood tests which are at odds with the genetic condition purportedly shared by the respondent and child.
LAW
(A) Background
Family Court Act § 532 provides for the admissibility of blood grouping tests in paternity proceedings to aid in ascertaining whether the alleged father is or is not the biological father of the child. The HLA test is a biochemical test which utilizes blood groups, serum proteins, and white and red blood cell enzymes to analyze the characteristics of a mother, child and putative father (Matter of Beaudoin v Tilley, 110 Misc 2d *77 696). Rather than being used solely for exclusionary purposes, HLA and related blood tests can increase the probability of exclusion to such a degree as to affirmatively prove paternity (Matter of A. T. v M. K., 145 Misc 2d 525; Matter of Department of Social Servs, v Thomas J. S., 100 AD2d 119 [2d Dept 1984]).[3]
The DNA probe, as a genetic blood marker test, is likewise admissible in paternity proceedings under Family Court Act § 532. (Matter of A. T. v M. K., supra; Matter of Baby Girl S., 140 Misc 2d 299 [Sur Ct, NY County 1988].) DNA testing is founded on the premise that each individual possesses his own genetic signature. (People v Wesley, 140 Misc 2d 306.) The DNA chain of every person is comprised of breaks, or " 'stutters’ ” which exist in a repetitive pattern throughout the DNA molecule. (1 Schatkin, Disputed Paternity Proceedings §5.11, at 5-8 [4th rev ed (1992 Supp Pamph)].) In DNA fingerprinting, a small sample of blood is taken from the mother, putative father and child. Cells containing the DNA are then extracted. An enzyme is added to fragment the DNA,[4] and the result of the process is a DNA fingerprint, much like a bar code appearing on retail products. (1 Schatkin, op. cit., § 5.11, at 5-8.) Each bar in the child’s code is attributable to either the biological mother or biological father. "[T]he examination begins with a comparison of the child’s DNA fingerprint with the mother’s, and the location of all bars which match the mother’s code. The man will then be *78 positively identified as the father if every remaining code of the child matches with a code of the putative father. If he is not the father, very few of the bars will match”. (1 Schatkin, op. cit., § 5.11, at 5-8.) By permitting blood genetic marker tests as inclusory evidence pursuant to Family Court Act § 532, courts have acknowledged the accuracy of such tests and their probative value in paternity cases.[5] (Matter of A. T. v M. K., supra, at 529.)
B. Analysis
Petitioner’s ultimate burden is to establish paternity by clear and convincing evidence, which is entirely satisfactory, and which creates a genuine belief that respondent is the biological father. (Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141-142; Matter of Jane PP v Paul QQ, 65 NY2d 994; Matter of Kimiecik v Jesse U., 111 AD2d 976 [3d Dept 1985].) Notwithstanding the weight accorded blood grouping tests in meeting that burden, it has been consistently held that such tests are not dispositive, and cannot be the sole basis for establishing paternity. (Matter of Julie UU. v Joseph W., 108 AD2d 1038 [3d Dept 1985]; Matter of Beaudoin v William HH., 157 AD2d 995 [3d Dept 1990].) Such tests are but one factor to be considered. (Matter of A. T. v M. K., supra, at 530; Matter of Department of Social Servs. v Thomas J. S., supra, at 124.) The court must weigh blood grouping evidence along with all other evidence in the case to arrive at the finding of paternity. (Matter of Commissioner of Social Servs. v Bart D., 121 Misc 2d 425 [Fam Ct, Kings County 1983]; Matter of Shirley R. v Ricardo B., 144 AD2d 472 [2d Dept 1988].)
Respondent claims that, while there may be arguable issues surrounding the conclusiveness of HLA and DNA results establishing the probability of paternity, such questions do not arise when the test results exclude paternity. When the result is exclusion in respondent’s view, the tests are conclusive and the results should not be challenged.
It is not disputed that the positive result of a blood test excluding paternity is accepted as fined, provided that required safeguards have been followed. (Gilpin v Gilpin, 197 Misc 319.) *79 Concededly, if the only evidence before this court were the HLA and DNA tests excluding respondent as the father, then dismissal would be warranted, since this court is unaware of any paternity case where a trial was held in the face of such evidence. At the same time, however, this court is also unaware of any case where, despite the blood test results, it is alleged that the child was born with a genetic condition which was shared by the putative father. Such unique factor clearly distinguishes this case from the typical one of exclusion. The question is whether this element is sufficient to defeat a motion to dismiss the paternity action. In this court’s view, it is sufficient.
It is appropriate, in reaching this determination, to be mindful of the main purpose of paternity proceedings, which is to " 'secure the health, welfare, and happiness of the child born out of wedlock’ ”. (Ettore I. v Angela D., 127 AD2d 6, 14 [2d Dept 1987].) Given that goal, if evidence before the court is sufficient to raise a question of fact on a point vital to the mother’s case, that question should be resolved at a hearing, and not exclusively on the papers.
Obviously, petitioner’s task of attacking the accuracy of both the HLA and DNA tests, and of establishing the paternity of respondent by clear and convincing evidence, will surely be monumental. Yet, although the task is formidable, a hearing should not be precluded. Under these facts, it is necessary for the court, as the trier of fact, to have as complete a record as possible, including the benefit of assessing the veracity of the parties and their witnesses, when resolving the issue of paternity. (See, Matter of Beaudoin v William HH., supra, at 995.)
In light of this result, only brief comment need be made regarding petitioner’s procedural argument. She contends that, pursuant to Family Court Act § 165[6] this court should not apply CPLR 3211, since the procedure for dismissing a *80 paternity petition is clearly prescribed in Family Court Act § 541. Given the court’s decision not to dismiss at this stage, the merits of that claim need not be addressed here. Assuming, arguendo, that CPLR 3211 is applicable, respondent failed to specify which section he is moving under. Presumably, it is the section calling for dismissal based upon documentary evidence — the HLA and DNA test results. (CPLR 3211 [a] [1].) As stated previously, such evidence is not sufficient, in and of itself, to defeat petitioner’s claim at this time. Were this court to grant such relief moreover, it would be virtually treating this motion as one for summary judgment. (CPLR 3211 [c]; 3212; see, Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:44, at 60.) This is so, because respondent is asking this court "on paper proof alone, without the aid of oral testimony * * * [to find] that there is no material issue of fact outstanding” on the question of paternity. (Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:l, at 310.) A motion for summary judgment is the procedural equivalent of a trial. (Holender v Cammann Prods., 78 AD2d 233.) The determination would be deemed a disposition on the merits, entitled to res judicata treatment. "With such an impact, this 'treatment’ is not to be lightly indulged.” (Siegel, Practice Commentary, op. cit, CPLR C321L44, at 61.) If there is any doubt as to the existence of a triable issue such remedy should not be granted. A question of fact is raised in this case, and a hearing is required.
Accordingly, the motion to dismiss the petition is denied.

. Family Court Act § 541 provides that "[i]f the court finds the male party is not the father of the child, it shall dismiss the petition.”

. CPLR 3211 (a) states:
"A party may move for judgment dismissing one or more causes of action asserted against him on the ground that:
"(1) a defense is founded upon documentary evidence; or
"(2) the court has not jurisdiction of the subject matter of the cause of action; or
"(3) the party asserting the cause of action has not legal capacity to sue; or
"(4) there is another action pending between the same parties for the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires; or
"(5) the cause of action may not be maintained because of arbitration and award, collateral estoppel, discharge in bankruptcy, infancy or other disability of the moving party, payment, release, res judicata, statute of limitations, or statute of frauds; or
"(6) with respect to a counterclaim, it may not properly be interposed in the action; or
"(7) the pleading fails to state a cause of action; or
"(8) the court has not jurisdiction of the person of the defendant; or
"(9) the court has not jurisdiction in an action where service was made under section 314 or 315; or
"(10) the court should not proceed in the absence of a person who should be a party; or
"(11) the party is immune from liability pursuant to section seven hundred twenty-a of the not-for-profit corporation law.”

. The HLA test has been described as "a super-system as compared with all the others. It involves many antigens on the lymphocytes (one of the varieties of white cells). These antigens are controlled by several closely-linked genetic loci (A, B, C, D...) Presently useful for paternity testing are about 40 antigens of the A and B loci, and these determine a very large number of different types, the most common of which has a frequency of less than 1 percent in the population. These antigens of the A and B series demonstrate exclusion in over 95 percent of cases in which the man is not the father * * * There is no doubt that the percentage of exclusion by HLA will soon reach 99 percent, and 99.9 percent is not a wild guess” (1 Schatkin, Disputed Paternity Proceedings § 8.08 [4th rev ed]; Matter of Department of Social Servs. v Thomas J. S., 100 AD2d 119 [1984]). The accuracy of the test is also acknowledged in scientific communities, and is used in matching donors and recipients organ transplants. (Supra.)

. According to Schatkin, the DNA fragments are then transferred to a nylon membrane where probes are attached. The probes attach to specific bands of repetitive DNA. The membrane is then exposed to an X-ray film, and the DNA fingerprint is revealed. The probability that two unrelated individuals share the same bar code is one in a quadrillion. (1 Schatkin, op. cit., § 5.11.) For a comprehensive discussion of the science theory, and principles of DNA testing, see People v Wesley (140 Misc 2d 306, supra).

. In the context of criminal law, the scientific theories underlying DNA analysis have gained general acceptance in the scientific community, under the standard enunciated in Frye v United States (293 F 1013), thereby making DNA evidence admissible against a defendant at trial. (See, People v Rivera, NYU, June 19,1992, at 26, col 1 [Suffolk County Ct].)

. Family Court Act § 165 (a) states: "Where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed by this act, the procedure shall be in accord with rules adopted by the administrative board of the judicial conference or, if none has been adopted, with the provisions of the civil practice act to the extent they are suitable to the proceeding involved. Upon the effective date of the CPLR, where the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved.”